**KOREA EXPRESS USA, INC., Plaintiff,**

v.

**K.K.D. IMPORTS, INC. and Nationsbanc Commercial Corporation, Defendants.**

**No. 99 Civ. 5140(NRB).**

United States District Court, S.D. New York.

June 1, 2000.

Henry P. Gonzalez, Carlos Rodriguez & Associates, Washington, DC, for Plaintiff.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff Korea Express USA, Inc. ("Plaintiff" or "Korea Express") brings this contract action to recover unpaid freight charges. Currently pending before the Court is a motion to dismiss the complaint by defendant Nationsbanc Commercial Corporation ("Nationsbanc") on the grounds of lack of subject matter jurisdic-

tion and improper venue.[1] In brief, Nationsbanc alleges that since there is no maritime contract between itself and plaintiff, there is no admiralty or maritime jurisdiction. Alternatively, Nationsbanc argues that venue is improper in the Southern District of New York because of the case's stronger connection to New Jersey. For the reasons discussed below, Nationsbanc's motion to dismiss is denied. However, we find that plaintiff has not established that venue lies in the Southern District of New York and, moreover, in the interest of justice order the case to be transferred to the District of New Jersey.

## BACKGROUND

Plaintiff Korea Express is a New Jersey corporation that "operat[es] as a duly tariffed and bonded non-vessel-operating common carrier." Plaintiff's Amended Complaint ("Am.Comp.") ¶ 3. Currently, it seeks to recover $40,315.00 in freight charges from defendant KKD,[2] a company that contracted with Korea Express for the shipment of cargo between Asia and the United States. Nationsbanc, a Georgia corporation, is a heavily secured investor in KKD. Since KKD is apparently insolvent, Korea Express is also proceeding against Nationsbanc on the theory that Nationsbanc exercised a degree of control over KKD sufficient to confer it with the status of a presumptive owner. See Pl. Mem. at 7–15 (citing, *inter alia*, *A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.*, 927 F.2d 713 (2d Cir.1991)).

Nationsbanc provided financing to KKD through a July 3, 1996 "Letter of Credit." Pl. Mem. Ex. F. In return, KKD signed a July 3, 1996 "Factoring Agreement," which provided, in relevant part, that KKD would:

grant [Nationsbanc] a security interest in all of [KKD's] present and future accounts, instruments, contract rights, chattel, paper, documents and general intangibles, (whether arising before or after termination of this Agreement) and all returned, repossessed, and reclaimed goods, and books and records relating thereto, to secure all of [KKD's] Obligations [to Nationsbanc]. [KKD] further sell[s] and assign[s] to [Nationsbanc] all [KKD's] title and/or interest in the goods (unless released by [KKD]) represented by Receivables as well as goods returned by or repossessed from Customers, all of [KKD's] rights against third parties with respect thereto; [KKD] will cooperate with [Nationsbanc] in exercising any rights with respect to the goods.

Pl. Mem. Ex. B, ¶ 5. The Factoring Agreement grants to Nationsbanc a power of attorney to "receive, open, and dispose of all mail addressed to [KKD] pertaining to Receivables" and to endorse KKD's name on any "notes, acceptances, checks, drafts, money orders, and other evidences of payment of receivables that may come into [Nationsbanc's] possession." *Id.* ¶ 4.

Nationsbanc acted almost immediately to protect its interests under the Factoring Agreement. Most importantly, on July 9, 1996, Nationsbanc had KKD's president sign an additional instrument, which informed the warehouse holding its goods that it had granted to Nationsbanc "a security interest in all of our present and future inventory" and requested that the warehouse send a monthly letter to Nationsbanc confirming the amount of the inventory and honor any instructions related to the goods issued by Nationsbanc. Pl. Mem. Ex. G. Throughout 1997 and 1998,

---

**1.** The other named defendant, K.K.D. Imports, Inc. ("KKD"), was served with the complaint but has never appeared in the action and plaintiff not moved for a default judgment against it. However, KKD's president, Seong D. Park, has been an active participant in discovery, providing both information and a March 24, 2000 affidavit. Exhibit E to Plaintiff's Opposition to Defendant's Motion to Dismiss and Memorandum of Law in Support Thereof ("Pl.Mem.").

**2.** KKD is a New York corporation with its principle place of business in New Jersey. Am. Comp. ¶ 4.

KKD apparently met part of its obligations to Nationsbanc by assigning at least some of its receivables directly to the bank. *Id.* Exs. H, I.

Between February 1, 1999 and March 31, 1999, KKD contracted with Korea Express to convey cargo from various ports in Asia to the United States. As is customary shipping arrangements, the terms entered into between KKD and Korea Express are included in the bills of lading for the various shipments. Pl. Mem. Ex. A. The bills clearly read:

> IN ACCEPTING THIS BILL OF LADING, the Shipper, Consignee, Holder hereof, and Owner of the goods, agree to be bound by all of its stipulations, exceptions and conditions, whether written, printed or stamped on the front or back herepf [sic], as well as the provisions of the above Carrier's published Trade Rules and Regulations, as fully as if they were all signed by the Shipper, Consignee, Holder or Owner. . . .

*Id.* The bills listed KKD as the "Consignee" and several Asian companies as "Shipper/Exporter." *Id.* They in no way referred to Nationsbanc. *Id.*

Despite this spate of activity, KKD defaulted on its obligations to Nationsbanc in April of 1999. Defendant's Notice of Motion ("Def.Mot."), Ex. O. KKD's president, Seong D. Park ("Park"), signed a "Surrender and Abandonment of Collateral" on April 7, 1999. *Id.* Among other things, KKD acknowledged its debt to Nationsbanc in the amount of $27,107,572 plus interest. *Id.* Pursuant to Nationsbanc's secured position *vis à vis* KKD, the document granted to Nationsbanc "all rights of possession in and to" KKD's "inventory, accounts, equipment, general intangibles, contract rights, books and records, chattel paper, leases and other personal property." *Id.*

Three weeks later, on April 20, 1999, officers of Korea Express visited the offices of KKD in order to demand payment for outstanding freight charges. Affidavit of Seong D. Park, dated March 24, 2000, appended to Pl. Mem. as Ex. E. ("Park Aff."). At that time, Park "informed [them] that Korea Express would have to look to Nationsbanc for payment since Nationsbanc was the owner of the goods [that Korea Express had shipped] and because KKD did not have any control over the goods or payment." Nationsbanc's counsel subsequently provided Korea Express with copies of the relevant security agreements, confirming its rights to the goods. Aff. of Stephen C. Pascal, dated Oct. 11, 1999 ("Pascal Aff."), ¶ 4.

Korea Express filed its initial complaint ("Comp.") in this suit on July 14, 1999, alleging contract claims against both KKD and Nationsbanc. It asserted maritime jurisdiction pursuant to an *"in rem* lien for unpaid freight." Comp. ¶ 12. However, in August, Nationsbanc's attorney wrote to counsel for KKD asserting the basic proposition that since Korea Express had surrendered possession of the goods, it could "not enforce a maritime lien for freight on that cargo." Letter of Stephen C. Pascal, dated August 10, 1999, appended to Def. Mot. as Ex. C. As a result, plaintiff amended its complaint on September 27, 1999 to withdraw its claim of jurisdiction based on a maritime lien and, instead, to assert general maritime jurisdiction. Korea Express also added claims of *quantum meruit* and unjust enrichment.

Nationsbanc brought its instant motion to dismiss on October 11, 1999. Pursuant to a November 12, 1999 Order, the Court interrupted the briefing schedule to allow Korea Express an opportunity to explore reasonable avenues of discovery relating to the jurisdictional controversy. The parties completed their briefing April 18, 2000.

## DISCUSSION

### A. Subject Matter Jurisdiction

In considering a motion to dismiss for lack of subject matter jurisdiction, we accept as true all material factual allegations in the complaint. *Atlantic Mutual Insur-*

*ance Co. v. Balfour Maclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff need only make a prima facie showing of subject matter jurisdiction at this stage of the proceedings. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* (citing *Norton v. Larney,* 266 U.S. 511, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). We may also consider evidence outside the pleadings, such as affidavits. *See Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS,* 78 F.Supp.2d 162, 165–66 (S.D.N.Y.1999) (citing *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90 (2d Cir. 1991)).

 Section 1333(1) of Title 28 of the United States Code grants federal district courts subject matter jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." The Supreme Court has made it clear that courts are to look to the purpose behind this grant of jurisdiction in determining its boundaries. *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 608, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991). In that regard, the "fundamental interest giving rise to maritime jurisdiction is the 'protection of maritime commerce.' " *Id.* (internal citations omitted).

 If a cause of action based in contract law is brought into federal court upon a claim of admiralty or maritime jurisdiction, then the focus must be on "the nature and subject matter of the contract, as whether it is a maritime contract, having reference to maritime service or maritime transactions." *Id.* (quoting *In Insurance Co. v. Dunham,* 78 U.S. 1, 11 Wall. 1,

20 L.Ed. 90 (1870)). Specifically, "courts should look to the subject matter of the [ ] contract and determine whether the services performed under the contract are maritime in nature." *Id.* at 612, 111 S.Ct. 2071. A court may also sustain admiralty jurisdiction over non-maritime elements of a case where such elements are either "incidental to a primarily maritime purpose" or inseparable without prejudice to the rest of the claims. *Sirius Insurance Co. (UK) Ltd. v. Collins,* 16 F.3d 34, 36 (2d Cir.1994). Thus, the first relevant set of contracts, Korea Express's bills of lading, Pl. Mem. Ex. A, are clearly maritime in nature and naturally give rise to Korea Express's claim over KKD.[3]

In contrast, Nationsbanc argues that since there is no maritime contract between itself and plaintiff and since its contract with KKD, the Factoring Agreement, is not maritime in nature, the case against Nationsbanc should be dismissed. To this end, Nationsbanc offers a vigorous defense to plaintiff's claim on the merits. However, Nationsbanc did not bring its motion under Federal Rule of Civil Procedure 12(b)(6), which could allow the Court to dismiss this claim for failure to state a claim for which relief may be granted. Instead, Nationsbanc brought its motion pursuant to 12(b)(1) for a lack of subject matter jurisdiction, which places upon plaintiff a far more minimal burden. Plaintiff's claim, under *Beaumont Oil,* 927 F.2d at 719–20, that Nationsbanc stepped into the shoes of KKD by taking possession of the goods shipped is inseparable from plaintiff's claim against KKD for the purposes of subject matter jurisdiction. Whether or not plaintiff is ultimately able to prevail on its claim of establishing liability on the part of Nationsbanc, the ques-

---

**3.** In its papers, Nationsbanc asserts that, "the complaint must be dismissed." Pascal Aff. ¶ 11. However, defendant fails to distinguish between a motion to dismiss the complaint in it entirety and a motion to merely dismiss the claims against Nationsbanc. *See also* Def. Mot. ("to dismiss the amended complaint"); Defendant's Memorandum of Law in Reply to

Opposition to Motion to Dismiss at 9 ("the amended complaint must be dismissed"). Inasmuch as the motion requests that the Court dismiss the complaint in its entirety, it must be denied. Since the bills of lading are inherently maritime in nature, the amended complaint may not be dismissed as against KKD on the grounds asserted.

tion posed by plaintiff's claim is directly relevant to the protection of maritime commerce. Therefore, plaintiff has met its minimal burden of establishing maritime subject matter jurisdiction.

We caution however, that this finding does not reflect any evaluation of plaintiff's substantive case. Indeed, Nationsbanc might well be advised to renew its argument on the merits in a proper motion for summary judgment.

## B. *Improper Venue*

 Nationsbanc next argues that this case should be dismissed as having been brought in an improper venue. *See* Fed. R.Civ.P. 12(b)(3). Section 1406(a) of Title 28 of the United States Code provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." District courts have broad discretion in formulating the appropriate procedures to be followed in deciding a motion to dismiss for lack of venue. *See Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 153 (2d Cir.1999); *Baby Boom Gifts, Inc. v. Luv N' Care, Ltd.,* No. 98 Civ. 8615, 1999 WL 825609, at *1 (S.D.N.Y. Oct. 15, 1999).

Because this case is in admiralty, the appropriate venue statute is 28 U.S.C. § 1391(b) which mandates that a case not founded solely on diversity of citizenship may be brought only in (1) a district where any defendant resides if they all reside in the same state; (2) a district where a substantial part of the events giving rise to the claim took place; or (3) a district where any defendant may be found, if there is no other district where the case may be brought.

Section 1391(b)(1) is inapplicable because plaintiff has not made any allegations relevant to any presence that Nationsbanc might have in New York. The complaint merely states that Nationsbanc

"is a corporation with an address" in Atlanta, Georgia. *Id.* ¶ 5. Similarly, § 1391(b)(2) does not control because Korea Express is entirely a New Jersey corporation, Am. Comp. ¶ 3, and KKD operated out of Carlstadt, New Jersey, "from 1996 to May 1999," Park Aff. ¶ 1. Moreover, KKD apparently sought its financing from Nationsbanc through its Georgia offices. *See* Pl. Mem. Ex. B. Although the bills of lading indicate that New York is the "place of delivery," Pl. Mem. Ex. A, there is no evidence that they ever reached New York. Indeed, the evidence is to the contrary, that the goods have been and continue to be stored in KKD's warehouse in New Jersey. *See* Pl. Mem. Ex. G; Pascal Aff. ¶ 12. As a result, Southern District of New York has no "substantial" connection to this claim.

Plaintiff apparently relies on § 1391(b)(3)'s grant of venue in a district "in which any defendant may be found, if there is no other district in which the action may otherwise be brought." Specifically, plaintiff points to the choice of forum provision of the bills of lading which designates the "Federal Courts of the United States in the city of New York" for "suits against the carrier." Am. Comp. ¶ 6; Pl. Mem. Ex. K. Plaintiff maintains that this provision "contemplates that all parties ... would avail themselves of [this district] if a dispute arose." Pl. Mem. at 24. However, this argument is without merit. The provision clearly is limited to suits "against the carrier" and does not in any way limit the venue of suits by the carrier. As a result, the action may have been brought elsewhere.

Based on the pleadings, venue in this district is therefore improper, and the Court is authorized to transfer the case to a district in which it may have been brought. *Le Blanc v. Cleveland,* 899 F.Supp. 149, 150 (S.D.N.Y.1995). Here, we find that the case may have been brought in the District of New Jersey since that is the apparent location where

"a substantial part of the events ... giving rise to the claim occurred."

■ In addition, even if we were to find venue in this district to be proper, we would still find that a transfer to the District of New Jersey is appropriate as in the best "interests of justice" under § 1404. Section 1404(a) provides that "[f]or the convenience of the parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." The purpose of 1404(a) is to "'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). At a minimum, New Jersey has a far stronger connection to this suit than the Southern District of New York.

■ Among the factors a court should consider in determining a question of venue are: (1) the place where the operative facts took place; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and the relative ease of sources of proof; (5) the forum's familiarity with the governing law and the weight accorded; (6) the availability of process to compel unwilling witnesses; and (7) the plaintiff's choice of forum. *JVC Professional Products, Co. v. HT Electronics, Inc.*, No. 99 Civ. 3425, 1999 WL 1080280, at *1 (S.D.N.Y. Dec. 1, 1999).

Of the factors, only one, plaintiff's choice of forum, clearly favors venue in New York. Balanced against that are: the location of the operative facts, the convenience of the parties, and the convenience of potential witnesses. As discussed above, most, if not all, of the operative facts occurred in New Jersey or Georgia. As a result, the greatest number of potential witnesses are likely to be located outside the Southern District of New York. Since

Korea Express and KKD operate [or operated] out of New Jersey, New Jersey is a more convenient forum. Finally, Nationsbanc has also expressed a clear preference for New Jersey. *See* Pascal Aff. ¶ 12.

The remaining factors are, at most, neutral. Although many of KKD's records are apparently stored in New York, *see* Declaration of Henry P. Gonzalez, dated Mar. 28, 2000, appended to Pl. Mem. as Ex. L, the goods themselves and many more related documents are located in New Jersey. New Jersey's district courts are as familiar as New York's with the tenets of admiralty law. And both state's district courts have equivalent process to compel unwilling witnesses. As a result, we find that defendants have made a "clear-cut showing" that transfer to the District of New Jersey is in the best interest of justice.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of jurisdiction is denied. However, in the interests of justice, the Clerk of the Court is directed to transfer this action to the District of New Jersey.

**IT IS SO ORDERED.**