**FREEPLAY MUSIC, LLC, Plaintiff,**

v.

**GIBSON BRANDS, INC. (f/k/a Gibson Guitar Corp.), Defendant.**

**16 Civ. 1457 (VM)**

United States District Court, S.D. New York.

Signed July 18, 2016

W. Schuettinger, Adorno & Yoss, LLP, Atlanta, GA, for Defendant. ·

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Freeplay Music, LLC ("Freeplay") brings this action against Gibson Brands, Inc. ("Gibson") for copyright infringement. (See Dkt. No. 1.) In its complaint, Freeplay alleges that Gibson exploited, without a license, five copyrighted sound recordings and compositions available on Freeplay's website by incorporating them into videos, posted on forty-nine websites, for Gibson's own products. ("Complaint," id. at 1.)

By letter dated June 21, 2016 ("June 21 Letter"), Gibson requested a pre-motion conference regarding its contemplated motion to transfer venue to either the Northern District of California or the Middle District of Tennessee ("Proposed Transferee Districts"). (Dkt. No. 22.) Among its arguments, Gibson contends that (1) key witnesses are in Tennessee; (2) the operative facts and documents occurred in Tennessee and California; and (3) Freeplay's choice of forum should be given less weight because the chosen forum is not where the relevant facts occurred. (Id.)

By letter dated June 28, 2016 ("June 28 Letter"), Freeplay responded to the June 21 Letter. (Dkt. No. 23.) Freeplay argues: (1) significant weight should be given to Freeplay's choice of forum because New York is its home state and Freeplay engages in ongoing business activity here; (2) all relevant documents, witnesses, and evidences regarding Freeplay's ownership and/or validity of the Copyrights is in New York; (3) TuneSat, the company that discovered Gibson's alleged use of the copyrights, is located in New York. (Id.)

Michelle Rene Usitalo, Tatiana Markel, Oren J. Warshavsky, Baker & Hostetler LLP, New York City, NY, for Plaintiff.

Kasia Walch, Laurence Phillip Chirch, Sandelands Eyet LLP, Bedminster, NJ, Andrea Bates, Bates & Bates, LLC, Kurt

The Court now construes the correspondence described above as a motion ("Motion") by Gibson to transfer venue to either of the Proposed Transferee Districts pursuant to 28 U.S.C. Section 1404(a) ("Section 1404"). For the reasons set forth below, the Motion is DENIED.

## I. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

■ In considering a motion to transfer venue, the inquiry is twofold. Smart Skins LLC v. Microsoft Corp., No. 14 Civ. 10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) ("The Second Circuit applies a two-part test to motions to transfer venue under § 1404(a).").

First, the court must determine whether the action could have been brought in the proposed transferee forum. See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525, 528 (S.D.N.Y.2004) (" 'The threshold question in deciding transfer of venue . . . is whether the action could have been brought in the transferee forum.' ").

■ If the action could have been filed in the proposed transferee district, the court must then determine whether transfer is appropriate. Courts typically consider nine factors in this regard: "(1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and

(9) judicial economy and the interests of justice." Frame v. Whole Foods Mkt., Inc., No. 06 Civ. 7058, 2007 WL 2815613, at *4 (S.D.N.Y. Sept. 24, 2007).

■ "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." Smart Skins LLC, 2015 WL 1499843, at *4. However, because the discretion under Section 1404 " 'must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [eighth] factor, plaintiff's choice of forum.' " Atl. Recording Corp. v. Project Playlist, Inc., 603 F.Supp.2d 690, 695 (S.D.N.Y.2009); see also Columbia Pictures Indus., Inc. v. Fung, 447 F.Supp.2d 306, 309 (S.D.N.Y. 2006) (" 'Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside.' ").

## II. DISCUSSION

A. WHETHER THE ACTION COULD HAVE BEEN BROUGHT IN THE PROPOSED TRANSFEREE DISTRICTS

The Court will first consider whether the action could have been brought in either of the Proposed Transferee Districts.

■ Under 28 U.S.C. Section 1400(a) ("Section 1400(a)"), "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." According to 28 U.S.C. Section 1391(c)(2), "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defen-

dant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"

In the instant action, Gibson is subject to personal jurisdiction in the Middle District of Tennessee, where its principal place of business is located and the Northern District of California, where it maintains a Research and Development Office.[1] (See Dkt. No. 22 at 2.) Since Gibson is subject to personal jurisdiction in both districts, it resides in the Proposed Transferee Districts for the purposes of Section 1400(a). Therefore, the first prong of the inquiry for a motion to transfer venue is satisfied.

## B. WHETHER TRANSFER OF VENUE IS APPROPRIATE

Since the action could have been filed in either of the Proposed Transferee Districts, the Court will now consider the nine factors mentioned above to determine if transfer is appropriate. See Frame, 2007 WL 2815613, at *4.

### 1. Convenience to Witnesses

▇▇▇ The convenience to witnesses is typically the most important consideration in deciding a motion to transfer venue. See Tillery v. NYS Office of Alcoholism & Substance Abuse Servs., No. 13 Civ. 0035, 2013 WL 6405326, at *4 (S.D.N.Y. Dec. 5, 2013) ("This factor is 'traditionally viewed as the most important.'"); AEC One Stop Grp., Inc., 326 F.Supp.2d at 529. However, the convenience to non-party witnesses is accorded more weight than that of party witnesses. Capitol Records, LLC v. VideoEgg, Inc., 611 F.Supp.2d 349, 366 (S.D.N.Y.2009).

▇▇▇ "'When weighing the convenience of the witnesses, courts must consid-

er the materiality, nature, and quality of each witness, not merely the number of witnesses in each district.' To succeed on a transfer motion, the moving party must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" AEC One Stop Grp., Inc., 326 F.Supp.2d at 529 (internal citations omitted); see also Caldwell v. Slip–N–Slide Records, Inc., No. 10 Civ. 9106, 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011) ("In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would [be] inconvenienced if the suit were to remain in the forum chosen by plaintiff.").

▇▇▇ Typically in a copyright infringement action, the key witnesses are those individuals who were involved in the design, production, and sale of the allegedly infringing product. See AEC One Stop Grp., Inc., 326 F.Supp.2d at 529.

▇▇▇ In this instance, Gibson has specifically identified two witnesses, John French and Paul Conley, who are both current employees of Gibson in Tennessee and will provide testimony regarding: "where or if they received the songs at issue[;] whether [they] downloaded and displayed the songs[;] did [they] do this for either the benefit of or at the direction of the company[;] and did [they] enter into a license agreement with Freeplay." (Dkt. No. 22 at 2-3.) Gibson also mentions that former employees may provide testimony regarding the same topics. However, Gibson fails to "'clearly specify'" the names or roles of these non-party witnesses. See AEC One Stop Grp., Inc., 326 F.Supp.2d at 529.

Freeplay also identifies both party and non-party witnesses that will likely testify

---

1. Freeplay does not dispute in the June 28 Letter that Gibson would be subject to personal jurisdiction in both the Northern District of California and the Middle District of Tennessee. (See Dkt. No. 23.)

on its behalf. First, Freeplay's party witnesses, although unnamed in the June 28 Letter, are all located in New York. (See Dkt. No. 23 at 3.) In this case, since Gibson alleges that the copyright assignment is not valid (see Dkt. No. 18), Freeplay may need to provide extensive testimony from its employees regarding the validity of the copyrights and their assignments, the investigation of the infringement, and any damages caused. Cf. Capitol Records, LLC, 611 F.Supp.2d at 367 (The court held that since the Plaintiff's "ownership of the allegedly infringed copyrights ... is relatively easily established and may very well be the subject of a stipulation by the time of trial," the convenience for plaintiff's witnesses was less of an issue.). Regarding non-party witnesses, Freeplay states that TuneSat, the New York company that discovered Gibson's alleged exploitation of the copyrighted material, will likely have employees testify regarding Gibson's infringement of the copyrighted material. (See Dkt. No. 23 at 2-3.)

Since the party witnesses that will probably testify are located in both Tennessee and New York, the analysis is neutral. However, since a specific non-party witness that will testify on behalf of Freeplay is located in New York and Gibson fails to explicitly identify non-party witnesses that are located in California or Tennessee, this factor ultimately weighs against transfer to either of the Proposed Transferee Districts.

### 2. Convenience to Parties

When analyzing the convenience to the parties, courts often look to the

parties' principal places of business and the location of their offices. See, e.g., DiPizio v. Empire State Dev. Corp., No. 15 Civ. 5339, 2015 WL 5824704, at *6 (S.D.N.Y. Oct. 5, 2015); Martignago v. Merrill Lynch & Co., No. 11 Civ. 3923, 2012 WL 112246, at *7 (S.D.N.Y. Jan. 12, 2012).

In this action, Freeplay's principal place of business is in New York, and it is not registered to do business in Tennessee. (See Dkt. Nos. 1, 23.) Gibson's principal place of business is in Tennessee, but it has an office in California and is registered to do business in New York. (See Dkt. Nos. 1, 18, 22-23.) Since the burden would solely shift from one party to the other, this factor weighs against transfer to either of the Proposed Transferee Districts.[2] See Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.").

### 3. Locus of Operative Facts

Typically, "[t]he operative facts in infringement cases usually relate to the design, development[,] and production of an infringing product." AEC One Stop Grp., Inc., 326 F.Supp.2d at 530; see also Cartagena Enterprises, Inc. v. J. Walter Thompson Co., No. 13 Civ. 4238, 2013 WL 5664992, at *6 (S.D.N.Y. Oct. 16, 2013) ("[T]he locus of operative facts is clearly in Puerto Rico, where the infringing videos were created[.]"). In this instance, the infringing product was created in Tennessee

---

**2.** In addition, Gibson argues that Freeplay has been sued in California, and therefore, it should "expect the possibility of being brought into court in California given its constant contact with the forum." (Dkt. No. 22 at 3.) However, defending an action in California is distinct from bringing an action there as a plaintiff. See e.g., Atl. Recording Corp.,

603 F.Supp.2d at 696 ("As [the defendant] points out, however, all six plaintiffs have commenced actions in the Northern District of California as recently as 2008. This evidence belies plaintiffs' claim that litigation in the Northern District would be inconvenient.") (emphasis added) (internal citations omitted).

and was streamed over the internet, allegedly over YouTube's data server in Tennessee. (See Dkt. No. 22 at 2-3.) Although it was streamed on YouTube, which is based in the Northern District of California (see id. at 1), the Court does not find this to be a sufficient nexus to California.

Although the injury from a copyright infringement occurs where the copyrights are owned, the infringing product was disseminated worldwide via YouTube and the product was created in Tennessee. See, e.g., Capitol Records, LLC, 611 F.Supp.2d at 368 ("The Hi5 website was designed and developed in California and the alleged partnership with VideoEgg was negotiated and implemented there. Although injury from copyright infringement occurs where the copyrights are owned, the copyrighted works are alleged to have been disseminated worldwide and the operative facts that will determine liability occurred in the proposed transferee forum.") (internal citations omitted). Therefore, even though some operative facts occurred in New York where the copyrights are owned and where the alleged injury occurred, the Court is persuaded that most of the operative facts weigh in favor of transfer to Tennessee. See, e.g., Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F.Supp.2d 474, 477–78 (S.D.N.Y.2006) ("The location of the books and records of the Plaintiffs relating to the strength of its mark are at least in part in New York and the Defendants' records are in California. The Defendants' records and witnesses relating to the operative facts and overall conduct are in California. The development of the operative facts weighs slightly in favor of Defendants."). Therefore, this factor weighs in favor of transfer to the Middle District of Tennessee.

4. Location of Documents and Relative Ease of Access to Sources of Proof

In copyright infringement cases, a bulk of the evidence typically comes from the infringer which therefore weighs in favor of transferring the action to where the infringer's documents are kept. See Capitol Records, LLC, 611 F.Supp.2d at 368. However, most documents are electronic, and neither party has argued that there is a burden in transporting the Evidence to this district. Frame, 2007 WL 2815613, at *6 ("'[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to [the moving party's proposed forum]."); see also Atl. Recording Corp. v. Project Playlist, Inc., 603 F.Supp.2d 690, 697 (S.D.N.Y. 2009) ("This factor is neutral. Most, if not all, of the relevant documents in this case will be electronic, and Playlist will simply put them on disks and send them to plaintiffs."). Therefore, while traditionally this factor would weigh in favor of transfer, it is neutral in this case.

5. Availability of Process to Compel the Attendance of Unwilling Witnesses

While Gibson argues that its employees and other non-party witnesses would prefer to testify in their home state, Gibson does not indicate that any specific witnesses would be unwilling to testify in New York. (See Dkt. No. 22 at 3.) Furthermore, the two witnesses that Gibson specifically mentioned in its June 21 Letter are first identified as employees, and only later did Gibson state that it is not clear if one of them is still employed. (See id. at 2-3, Ex. A.) Therefore, this factor is neutral, as there does not appear to be any indication that the relevant witnesses will refuse to testify in New York. See, e.g., Atl. Recording Corp., 603 F.Supp.2d at 697 ("Playlist does not argue, however, that these witnesses would be unwilling to testify at trial

in this District, and therefore this factor is neutral in the Court's analysis.") (emphasis in original).

### 6. Forum's Familiarity with Governing Law

■ Overall, the forum's familiarity with governing law is a factor that is generally given little weight. See AEC One Stop Grp., Inc., 326 F.Supp.2d at 531 ("Familiarity with the governing law is generally given little weight in federal courts."). Moreover, since federal copyright laws are a subject with which both this district and the Proposed Transferee Districts are familiar, this factor weights against transfer. See id. ("In this instance, where the issue of federal copyright law is a subject on which both courts are familiar, this factor is neutral.").

Although Gibson alleges state law claims, "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc., No. 06 Civ. 395, 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (finding the factor neutral). But see Capitol Records, LLC, 611 F.Supp.2d at 368 ("Plaintiffs also assert common law copyright infringement claims under New York law for their pre-1972 sound recordings. Where a plaintiff asserts state law claims, 'the forum's familiarity with governing law supports retention of the action,' but this factor is 'one of the least important factors in determining a motion to transfer.' Accordingly, this factor weighs slightly, but not substantially, against transfer.") (internal citations omitted). Thus, this factor is neutral.

### 7. Relative Financial Means of the Parties

Neither party asserts that there is a financial disparity between the parties. In addition, "[w]hen both parties are corporations, . . . this factor is given little weight."

AEC One Stop Grp., Inc., 326 F.Supp.2d at 531. Accordingly, this factor is neutral.

### 8. Plaintiff's Choice of Forum

■ Typically, the plaintiff's choice of forum is given substantial deference especially if it is the plaintiff's home state or where the plaintiff is engaged in ongoing business activity. See, e.g., Atl. Recording Corp., 603 F.Supp.2d at 698 ("The Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.' That presumption is even stronger where the chosen forum is also the plaintiff's home.") (internal citations omitted); AEC One Stop Grp., Inc., 326 F.Supp.2d at 531 ("'Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly de minimis."); see also Kwik Goal, Ltd., 2006 WL 1489199, at *2 ("[T]he plaintiff's selection is entitled to less deference here. First, the chosen forum is not plaintiff's home state."). In this case, New York is Freeplay's home state and where it engages in ongoing business activity. (See Dkt. No. 23 at 2.)

■ However, courts have accorded less deference to a plaintiff's choice of forum if the case lacks significant contacts with the forum state. Kwik Goal, Ltd., 2006 WL 1489199, at *2 ("[C]ourts have accorded less deference to a plaintiff's choice of forum if the case lacks material or significant contacts with the forum state."). Although many of the operative facts relate to Tennessee as outlined above, there is a connection with New York in that New York is where the alleged infringement was discovered by TuneSat and where the injury to Freeplay occurred. Therefore, given that courts typically give a plaintiff's choice of forum deference, this factor weighs against transfer.

### 9. Trial Efficiency and Interests of Justice

Since this action is at its earliest stages, it would not be inefficient to transfer the case. See, e.g., Frame, 2007 WL 2815613, at *7 ("Since the case is at its earliest stages, there would be little loss in judicial economy by transferring the case."). Therefore, this factor is neutral.

In sum, the Court finds that the balance of factors weigh against transfer to either of the Proposed Transferee Districts.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Gibson Brands, Inc. ("Gibson") to transfer venue, to the Northern District of California or the Middle District of Tennessee pursuant to 28 U.S.C. Section 1404(a) (Dkt. No. 22) is **DENIED.**