**ROYAL & SUN ALLIANCE INSURANCE, PLC, Plaintiff,**

v.

**NIPPON EXPRESS USA, INC., and Maersk Line A/S, Defendants.**

**15 Civ. 7849 (VM)**

United States District Court, S.D. New York.

Signed August 18, 2016

---

David Thomas Maloof, Thomas Mark Eagan, Maloof Browne & Eagan LLC, Rye, NY, for Plaintiff.

Dennis A. Cammarano, Law Offices of Dennis A. Cammarano, Long Beach, CA, William Joseph Pallas, III, Freehill, Hogan & Mahar, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff Royal & Sun Alliance Insurance, PLC ("RSA"), insurer of Johnson & Johnson Group ("J&J"), brings this action against defendants Nippon Express USA, Inc. ("NEU") and Maersk Line A/S ("Maersk") (collectively, "Defendants") for

breach of contract. ("Third Amended Complaint," Dkt. No. 42.) RSA alleges that J&J delivered a shipment, insured by RSA, of temperature sensitive reactive mix monomers ("Shipment") to the care and custody of NEU in Atlanta, Georgia in good order and condition. (Id. at 1-2.) RSA claims that NEU received and accepted the Shipment and agreed, in exchange for payment, to properly and safely, store, handle, and protect the Shipment and to deliver the Shipment to J&J or its designee in the same condition as when received. (Id. at 2-3.) However, RSA alleges that NEU did not properly set or monitor the required temperatures on the shipping containers. (Id. at 3.) Thereafter, the Shipment was delivered to Maersk in Atlanta, Georgia for transportation to Charleston, South Carolina and ultimately Limerick, Ireland. (Id.) RSA claims that Maersk agreed to transport the Shipment and deliver it in the same order and condition as when received. (Id.) RSA alleges that Defendants failed to perform their services as agreed upon and further alleges that the Shipment was damaged in value, all in violation of Defendants' obligations. (Id. at 3-4.)

By letter dated April 14, 2016 ("Motion"), NEU moved for a transfer of venue to the Atlanta Division of the Northern District of Georgia. (Dkt. No. 25.) Among its arguments, NEU contends that (1) the operative facts occurred in Georgia; (2) key witnesses and documents are in Georgia, and the Northern District of Georgia would have the ability to compel the attendance of unwilling witnesses; and (3) it is more efficient to resolve the claim where it arose. (Id. at 2-5.)

In a letter to the Court dated June 1, 2016 ("Maersk's Response"), Maersk responds to NEU's Motion. (Dkt. No. 37.) Maersk notes that the bill of lading governing the Shipment provides for mandatory and exclusive jurisdiction in the Southern District of New York, and the Service Contract with J&J indicates that the parties agreed to arbitrate any disputes in New York. (Id. at 1.) However, Maersk agrees to waive its right to arbitrate under the Service Contract if the present action continues in the Southern District of New York. (Id. at 1-2.) However, Maersk expressly reserves the right to enforce the arbitration clause if the action is transferred to the Northern District of Georgia or any other venue. Additionally, Maersk notes that it routinely conducts litigation in New York since the bill of lading includes the New York jurisdiction clause and therefore has no objections to proceeding in this venue. (Id. at 2.)

By letter dated July 7, 2016 (Dkt. No. 47) and amended letter dated July 25, 2016 ("RSA's Response"), RSA argues that a transfer of venue is not warranted because (1) the remaining third-party witnesses to be deposed are in the New York area or RSA agrees to depose them in their home location; (2) all five of the actual and de facto parties to the dispute are located in the New York metropolitan area; (3) many of the operative facts occurred in New York, including the contracting process and the subsequent investigation of the damage to the Shipment; (4) judicial economy counsels in favor of maintaining the action in the Southern District of New York as only two months remain in the discovery schedule. (Dkt. No. 60 at 2-5.)

In a letter dated July 18, 2016, NEU replied to RSA's Response ("Reply"). (Dkt. No. 52.) NEU reiterates that most of the operative facts occurred in the Northern District of Georgia. (Id. at 1.) In addition, NEU contends that the Motion is timely, and any delay in consideration of this Motion was created by RSA.[1] (Id. at 2.)

---

1. Prior to NEU's deadline to file the Motion, on April 11, 2016, RSA requested a pre-mo-

tion conference regarding its motion to

For the reasons set forth below, NEU's Motion to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. Section 1404(a) ("Section 1404") is DENIED.

## I. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

 In considering a motion to transfer venue, the inquiry is twofold. Smart Skins LLC v. Microsoft Corp., No. 14 Civ. 10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) ("The Second Circuit applies a two-part test to motions to transfer venue under § 1404(a).").

First, the court must determine whether the action could have been brought in the proposed transferee forum. See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525, 528 (S.D.N.Y.2004) (" 'The threshold question in deciding transfer of venue . . . is whether the action could have been brought in the transferee forum.' ").

 If the action could have been filed in the proposed transferee district, the court must then determine whether transfer is appropriate. Courts typically consider nine factors in this regard: "(1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses;

(6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice." Frame v. Whole Foods Mkt., Inc., No. 06 Civ. 7058, 2007 WL 2815613, at * 4 (S.D.N.Y. Sept. 24, 2007).

 "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." Smart Skins LLC, 2015 WL 1499843, at *4. However, because the discretion under Section 1404 " 'must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [eighth] factor, plaintiff's choice of forum.' " Atl. Recording Corp. v. Project Playlist, Inc., 603 F.Supp.2d 690, 695 (S.D.N.Y.2009); see also Columbia Pictures Indus., Inc. v. Fung, 447 F.Supp.2d 306, 309 (S.D.N.Y. 2006) (" 'Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside.' ").

## II. DISCUSSION

### A. WHETHER THE ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF GEORGIA

The Court will first consider whether the action could have been brought in the Northern District of Georgia.

 Under 28 U.S.C. Section 1391(c)(2), "an entity with the capacity to sue and

---

amend the Complaint to add Maersk as a defendant. (Dkt. No. 24.) On April 27, 2016, the Court granted RSA's request for leave to file an amended complaint to add Maersk as a defendant, ordered Maersk to respond to NEU's Motion, and stayed the briefing sched-

ule of the Motion until Maersk had filed its response. (Dkt. No. 27.) On June 28, 2016, the Court granted NEU's request by letter dated the same day to lift the stay on briefing. (Dkt. No. 46.)

be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). In this action, NEU is subject to personal jurisdiction in the Northern District of Georgia because it maintains a facility there (see Dkt. No. 42 at 2) and has purposefully availed itself of conducting business there (see Dkt. No. 25 at 1). Therefore, the first prong of the inquiry for a motion to transfer venue is satisfied with respect to NEU.

However, although Maersk does not directly raise the issue in Maersk's Response, RSA's Response indicates that although the action could have been brought against NEU in Georgia, it could not have been brought against Maersk in Georgia. (Dkt. No. 60 at 4 n.3.) Therefore, since the first prong of the inquiry for a transfer of venue is not satisfied with respect to Maersk, transferring the action between RSA and NEU to the Northern District of Georgia would likely result in split proceedings.

## B. WHETHER TRANSFER OF VENUE IS APPROPRIATE

■ Since the action could have been filed in the Northern District of Georgia with respect to NEU,[2] the Court will now consider the nine factors mentioned above to determine whether transfer would be appropriate. See Frame, 2007 WL 2815613, at *4.

### 1. Convenience to Witnesses

■■ The convenience of witnesses is usually the most important consideration in deciding a motion to transfer venue. See

AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525, 529 (S.D.N.Y.2004); In re Stillwater Min. Co. Sec. Litig., No. 02 Civ. 2806, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003). However, the convenience to non-party witnesses is accorded more weight than that of party witnesses. Capitol Records, LLC v. VideoEgg, Inc., 611 F.Supp.2d 349, 366 (S.D.N.Y.2009).

■ " 'When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district.' To succeed on a transfer motion, the moving party must 'clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.' " AEC One Stop, 326 F.Supp.2d at 529 (internal citations omitted); see also Caldwell v. Slip–N–Slide Records, Inc., No. 10 Civ. 9106, 2011 WL 3251502, at *3 (S.D.N.Y. July 26, 2011) ("In a motion to transfer venue, the movant bears the burden of identifying any and all potential witnesses who would inconvenienced if the suit were to remain in the forum chosen by plaintiff.").

■ In this instance, NEU has specifically identified numerous witnesses and the topics that each individual's testimony will cover in Exhibit A to the Motion. (Dkt. No. 25, Ex. A.) NEU argues that of those witnesses, the most integral are third parties who live and work in or near Atlanta. (Id. at 3.) For example, Christopher Small ("Small"), the trucker who delivered the Shipment to NEU's facility and transported it back to Charleston is expected to testify "regarding the instructions he received, the urgency associated with the

---

**2.** As mentioned above, upon review of the correspondence, the Court finds that the action could not have been brought against Maersk in the Northern District of Georgia. Therefore, the Court will review whether transfer is appropriate only as it relates to NEU.

[S]hipment, the setting of the temperature on the ocean container, whether that setting was checked when he left the Port, while he was at NEU's facility, or upon his return to the Port, the condition of the shipment when it was loaded into the container, and the conditions in transit from Atlanta to Charleston." (Id.) Although Small lives in Marion, South Carolina, NEU states that he probably does business in the Northern District of Georgia and would therefore be subject to compulsory process there. (Id.)

NEU also identifies several other non-party witnesses including a former employee, employees of California Cartage Express, LLC, which hired Small, employees of J&J's preferred trucker that did not transport this Shipment, and employees of Maersk's terminal contractor, among others. (Id. at 3–4.)

RSA also provides a list of witnesses in RSA's Response and indicates generally what each witness's testimony will cover. (Dkt. Nos. 48 at 1-3; 61 at 3-5). RSA argues that most of the third-party witnesses with the necessary knowledge regarding this breach of contract action are located in the New York metropolitan area. In addition, the remaining three witnesses to be deposed are all located in New York. (Dkt. No. 60 at 2-3.)[3]

In terms of party witnesses, the Court finds that many-will likely be located in New York because: (1) the contracts were negotiated and executed in New York; (2) the investigation of the alleged breach substantially occurred in New York; and (3) the assessment of damages also occurred in New York. However, since many of the non-party witnesses that will likely testify are located in or around the Northern District of Georgia, including those identified in Exhibit A to the Motion, this factor weighs in favor of transfer to the Northern District of Georgia.

### 2. Convenience to Parties

■ When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices. See, e.g., DiPizio v. Empire State Dev. Corp., No. 15 Civ. 5339, 2015 WL 5824704, at *6 (S.D.N.Y. Oct. 5, 2015); Martignago v. Merrill Lynch & Co., No. 11 Civ. 3923, 2012 WL 112246, at *7 (S.D.N.Y. Jan. 12, 2012).

■ In this action, RSA's primary place of business is in the United Kingdom (see Dkt. Nos. 1 at 1; 25 at 2), but it has an office in New York (Dkt. No. 60 at 4). NEU's principal place of business is in Long Island City, New York but it also maintains facilities in Atlanta, Georgia. (See Dkt. Nos. 25 at 2, 60 at 4.) Maersk's principal place of business is in Denmark with offices in the New York metropolitan area. (See Dkt. No. 1 at 2.) In addition, Maersk points out that it is regularly a party to actions in New York and does not oppose RSA's chosen venue. (See Dkt. No. 37 at 2.) Since all parties maintain an office near the New York area, and transferring the action to the Northern District of Georgia would simply shift the burden from one party to the other, this factor weighs against transfer. See Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645, 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff.").

### 3. Locus of Operative Facts

■ Typically, "[t]he location of the operative events is a primary factor in de-

---

3. Maersk states that it can produce witnesses in New York (Dkt. No. 37 at 2) but does not " 'clearly specify' " the names or roles of potential witnesses. See AEC One Stop Grp., Inc., 326 F.Supp.2d at 529.

termining a [Section] 1404(a) motion to transfer." Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F.Supp.2d 735, 745 (S.D.N.Y.2013) (quoting Smart v. Goord, 21 F.Supp.2d 309, 316 (S.D.N.Y.1998)).

When determining the locus of operative facts, " 'a court must look to the site of the events from which the claim arises.' " Everlast World's Boxing Headquarters Corp., 928 F.Supp.2d at 745 (quoting AVEMCO Ins. Co. v. GSV Holding Corp., No. 96 Civ. 8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997)). Specifically, for a breach of contract action, the court must consider (1) "the location where the contract was negotiated or executed," (2) "where the contract was to be performed," and (3) "where the alleged breach occurred." Everlast World's Boxing Headquarters Corp., 928 F.Supp.2d at 745 (citing Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional, No. 08 Civ. 8106, 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009)).

Generally, transfers from this district are substantially favored when a party " 'has not shown that any of the operative facts arose in the Southern District of New York.' " Everlast World's Boxing Headquarters Corp., 928 F.Supp.2d at 745 (quoting Dr. Boy GmbH v. Nationwide Ins., No. 96 Civ. 3217, 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996)).

Here, the contracts and agreements were negotiated and executed in New York. (See Dkt. No. 60 at 4.) However, the contract was to be performed substantially outside of the state of New York, as the vast majority of the activities under the contract occurred in Georgia and South Carolina. (See Dkt. Nos. 25 at 1-2;

60 at 4.) In addition, the alleged breach occurred when the incorrect temperature was set on the storage containers, an event that allegedly occurred upon NEU's possession of the Shipment in Georgia and then transfer to Maersk.[4] (See Dkt. No. 42 at 3-4.) Therefore, even though some of the operative facts occurred in New York, the Court is persuaded that most of the operative facts weigh in favor of transfer to the Northern District of Georgia.

4. Location of Documents and Relative Ease of Access to Sources of Proof

Regarding documentary evidence, most documents are electronic or can be shared electronically, and neither party has argued that there is a substantial burden in transporting the evidence. See Frame, 2007 WL 2815613, at *6 ("[A]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to [the moving party's proposed forum]."); see also U.S. Commodity Futures Trading Comm'n v. Wilson, 27 F.Supp.3d 517, 540 (S.D.N.Y.2014) ("Courts in this district recognize that [t]he location of documents, is neutral in today's era of photocopying, fax machines and Federal Express.") (internal quotation marks omitted).

In terms of physical evidence, NEU argues that NEU's facility, Small's truck, and the cargo samples are either in Atlanta or can be more easily transported to Atlanta. (Dkt. No. 25 at 4.) However, based on the correspondence, the Court is not persuaded that these pieces of physical

---

4. The Court notes that RSA argues that the post-accident investigation occurred in New York and the United Kingdom. (Dkt. No. 60 at 4.) However, the location of the investigation is not relevant to the Court's analysis regarding the locus of operative facts for a breach of contract action. See Everlast World's Boxing Headquarters Corp., 928 F.Supp.2d at 745.

evidence are integral to this cause of action. Furthermore, the cargo samples are located in Florida (see id.), and NEU does not make a compelling argument that transportation to Georgia is materially different from transportation to New York.

Therefore, given the well-established use of electronic discovery, and "absent any concrete illustration of inconvenience to either side relating to documents or other non-testimonial evidence," the Court finds that this factor does not materially favor either New York or Georgia. See Everlast World's Boxing Headquarters Corp., 928 F.Supp.2d at 747. Thus, this factor is neutral.

### 5. Availability of Process to Compel the Attendance of Unwilling Witnesses

In its Motion, NEU identifies two key third-party witnesses from which it would need to compel testimony: (1) Small, the trucker of the Shipment, who resides in Marion, South Carolina, and (2) Carla Patrick Gay, a former NEU employee who booked the Shipment for J&J with Maersk, whose last known address is in Riverdale, Georgia. (Dkt. No. 25 at 3.) Although NEU argues that it is more convenient that these witnesses testify near their homes (see id. at 4), NEU does not indicate that any specific witnesses would be unequivocally unwilling to testify in New York. See, e.g., Atl. Recording Corp. v. Project Playlist, Inc., 603 F.Supp.2d 690, 697 (S.D.N.Y.2009) ("[The defendant] identifies several prospective witnesses who would '[p]resumably ... be more willing to testify in their home state than New York.' [The defendant] does not argue, however, that these witnesses would be unwilling to testify at trial in this District, and therefore this factor is neutral in the Court's analysis.") (internal citations omitted). Therefore, this factor is neutral.

However, assuming these witnesses and potentially others are unwilling to testify,

Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") indicates that a "subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

Under Rule 45, non-party witnesses would be subject to the court's subpoena power (i) within 100 miles of where they reside, are employed, or regularly transact business if commanded to attend a trial, hearing, or deposition or (ii) within the state, if commanded to attend a trial and it would not be substantial expense. (Id.) Therefore, the key non-party witnesses NEU identifies in its Motion would likely be subject to the subpoena power of the Northern District of Georgia but not the Southern District of New York.

Party witnesses are subject to the subpoena power of the Court (i) within 100 miles of where they reside, are employed, or regularly transact business if commanded to attend a trial, hearing, or deposition or (ii) within the state, if commanded to attend a trial, regardless of expense. (Id.) Thus, if the action were to be transferred to the Northern District of Georgia, the party witnesses that reside or work in New York would not be within the subpoena power of the court.

Accordingly, this factor weighs slightly in favor of transfer regarding non-party witnesses but weighs against transfer with respect to party witnesses that reside or work in New York. Given that neither party has indicated that any witness is definitively unwilling to testify, this factor is ultimately neutral.

### 6. Forum's Familiarity with Governing Law

In federal court, familiarity with the governing law is generally given little weight when considering transfer of venue. See Mastr Asset Backed Securities Trust 2007–WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC, 880 F.Supp.2d 418, 423 (S.D.N.Y.2012) (citing Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F.Supp.2d 474, 479 (S.D.N.Y.2006)).

As an initial matter, the parties dispute what law applies: New York, Georgia, Ireland, or federal common law. (See Dkt. Nos. 25 at 4-5; 60 at 5.) Both this Court and the Northern District of Georgia are equally familiar with federal law and can become sufficiently well-versed on applicable Irish law for the purposes of this dispute. If New York law applies, "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc., No. 06 Civ. 395, 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (finding the factor neutral). Even though it is possible that " 'the forum's familiarity with the governing law may be a factor even in contract cases,' " Mastr Asset Backed Securities Trust 2007–WMC1, ex rel. U.S. Bank Nat. Ass'n, 880 F.Supp.2d at 423, this Court is persuaded that the Northern District of Georgia is both capable and routinely does apply New York contract law. See id. ("The parties agree that New York law governs the operative contracts. However, this Court does not doubt that the District of Minnesota is perfectly capable of applying, and routinely does apply, straightforward New York contract law."). Therefore, this factor is neutral.

### 7. Relative Financial Means of the Parties

Neither party asserts that there is a financial disparity between the parties.

In addition, "[w]hen both parties are corporations, ... this factor is given little weight." AEC One Stop Grp., Inc., 326 F.Supp.2d at 531. Accordingly, this factor is neutral.

### 8. Plaintiff's Choice of Forum

Typically, the plaintiff's choice of forum is given substantial deference especially if it is the plaintiff's home state or where the plaintiff is engaged in ongoing business activity. See, e.g., Atl. Recording Corp., 603 F.Supp.2d at 698 ("The Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.' That presumption is even stronger where the chosen forum is also the plaintiff's home.") (internal citations omitted); Kwik Goal, Ltd., 2006 WL 1489199, at *2 ("[T]he plaintiff's selection is entitled to less deference here. First, the chosen forum is not plaintiff's home state."); AEC One Stop Grp., Inc., 326 F.Supp.2d at 531 (" 'Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly de minimis.").

In this action, RSA's principal place of business is in the United Kingdom, but it maintains an office in New York. (See Dkt. Nos. 42 at 1; 60 at 4.) Upon review of RSA's Response, the Court is not persuaded that RSA engages in ongoing business activity in New York as RSA cites to the existence of the office here only as evidence as to why this Court deny the Motion. (See Dkt. No. 60 at 5.)

Courts have also accorded less deference to a plaintiff's choice of forum if the case lacks significant contacts with the forum state. Kwik Goal, Ltd., 2006 WL 1489199, at *2 ("Second, courts have accorded less deference to a plaintiff's choice

of forum if the case lacks material or significant contacts with the forum state."). Although this action does have a connection to New York because both the contracting process and the subsequent investigation into the alleged breach occurred here, as mentioned above, this connection to New York is tenuous as a majority of the operative facts took place in Georgia.

Overall, since courts typically give a plaintiff's choice of forum deference, the Court finds that this factor weighs slightly in favor of transfer or is neutral.

### 9. Trial Efficiency and Interests of Justice

When a case is in its earliest stages, it is generally not inefficient to transfer the case. See, e.g., Frame, 2007 WL 2815613, at *7 ("Since the case is at its earliest stages, there would be little loss in judicial economy by transferring the case."). Here, however, the parties are only two months away from the close of discovery. (See Dkt. No. 60 at 5.) While the delay in consideration of this Motion was due to the stay that was imposed to allow Maersk to be joined as a necessary party, litigation appears to be well underway and moving towards trial. Therefore, judicial efficiency will be lost by transferring this action to the Northern District of Georgia. More importantly, as mentioned above, if Maersk is not subject to personal jurisdiction in Georgia, transferring the action between RSA and NEU to the Northern District of Georgia would result in split proceedings, a highly inefficient result. Accordingly, this factor weighs against transfer.

In sum, the Court finds that the balance of factors, especially trial efficiency and the interests of justice, weigh against transfer to the Northern District of Georgia.

### III. ORDER

For the reasons stated above, it is hereby **ORDERED** that the motion of defendant Nippon Express USA, Inc. ("NEU") to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. Section 1404(a) (Dkt. No. 25) is **DENIED.**

**SO ORDERED.**