ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff Travelers Property Casualty Company of America ("Plaintiff") commenced *371 this admiralty and maritime action on September 26, 2017, requesting that the Court enter a declaratory judgment against Ocean Reef Charters LLC ("Ocean Reef") and Stonegate Bank (the "Bank")[1] (collectively, "Defendants") that sets forth the parties' rights and obligations under a maritime insurance policy (the "Policy") covering a 1998 92-foot Hatteras yacht (the "Yacht"). (Dkt. 1).
Presently before the Court is Ocean Reef's motion to transfer venue (Dkt. 16), Centennial's motion to transfer venue, and, in the alternative, to dismiss the action (Dkt. 18), and Ocean Reef's motion for leave to file supplemental evidence (Dkt. 30). For the following reasons, Ocean Reef's motion to transfer is granted, Centennial's motion is granted to the extent that it seeks to transfer venue to the Southern District of Florida but is otherwise denied, and Ocean Reef's motion for leave to file supplemental evidence is denied.
BACKGROUND [2]
Plaintiff, a Connecticut business entity with its principal place of business located in Connecticut, is in the business of issuing marine insurance policies. (Dkt. 1 at ¶ 5). In August 2016, Plaintiff issued the Policy to Ocean Reef, effective October 10, 2016, through October 10, 2017, which provided various insurance coverages for the Yacht. (Id. at ¶ 8; see Dkt. 15 (the Policy) ). The Bank is included as a "loss payee" on the Policy. (Dkt. 1 at ¶ 10; see Dkt. 15 at 30). The Policy provides coverage for property damage, commercial towing/emergency services, liability, medical payments, longshore & harbor workers, personal property, and uninsured/underinsured boaters. (Dkt. 15 at 30). The Policy contains a "Captain Warranty," requiring the employment of a "professional captain," and a "Crew Warranty," requiring the employment of "1 full time or part time professional crew." (Dkt. 1 at ¶¶ 12-13; see Dkt. 15 at 27-28). The Policy also includes a "Named Storm Deductible Endorsement," which increases the insurance deductible to five percent "of the Physical Damage amount of insurance" provided within the declarations page "for any loss or damages" resulting from a "named storm as defined by the National Oceanic and Atmospheric Administration (NOAA)," under certain specified conditions. (Dkt. 1 at ¶ 14; see Dkt. 15 at 29).
Ocean Reef has claimed that the Yacht was damaged in September 2017, as a result of Hurricane Irma. (Dkt. 1 at ¶¶ 15-16). Plaintiff alleges that Ocean Reef did not employ or otherwise secure the services of an "approved captain" or a "professional crew." (Id. at ¶¶ 18-22). Plaintiff further alleges that Ocean Reef requested that Plaintiff "make an advance payment to fund the raising of the vessel," and that Plaintiff agreed to do so "subject to a complete reservation of rights, including the right to seek reimbursement." (Id. at ¶¶ 24-25). Ocean Reef allegedly "received the benefit of [Plaintiff]'s payment." (Id. at ¶ 27).
PROCEDURAL HISTORY
On September 26, 2017, Plaintiff commenced this action requesting a declaratory judgment clarifying the parties' rights and responsibilities under the Policy. Specifically, Plaintiff seeks a judgment declaring that: (1) Ocean Reef violated the Captain *372 Warranty and the Crew Warranty; (2) Both violations preclude coverage for any claimed damages or costs; and (3) Plaintiff has no obligation to pay for any claimed damages and costs under the Policy. (Id. at 7). In the alternative, Plaintiff seeks a judgment declaring that the "named storm" deductible applies to any recoverable claim sought by Ocean Reef. (Id. ). Plaintiff further requests that the judgment declare its right "to recover the amounts paid to raise the vessel, plus interest and costs," as well as "the costs, disbursements and reasonable fees of this action." (Id. ).
On December 15, 2017, Ocean Reef filed a motion to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). (Dkt. 16). On December 21, 2017, the Bank filed a separate motion to transfer, which also requested that this case be transferred to the Southern District of Florida pursuant to § 1404(a). (Dkt. 18). In addition, the Bank asserts, in the alternative, that it should be dismissed from this action because the Court cannot assert personal jurisdiction over it. (Id. ). Plaintiff opposes both motions. (Dkt. 21; Dkt. 24).
On January 31, 2018, Ocean Reef filed a motion for leave to file supplemental evidence. (Dkt. 30). Specifically, Ocean Reef requested leave to file a loan agreement related to the Yacht, which was executed between itself and the Bank in 2016. Ocean Reef claims that the agreement would rebuff Plaintiff's assertion that the Bank negotiated, delivered, and issued this loan in Rochester, New York. The Bank filed a declaration suggesting that the loan agreement is irrelevant to whether the Court should transfer this case to the Southern District of Florida. (Dkt. 33). Plaintiff opposes Ocean Reef's motion for leave to file supplemental evidence. (Dkt. 32).
On August 8, 2018, the Court heard argument on the parties' respective motions and reserved decision.
DISCUSSION
I. Defendants' Motions to Transfer Venue
A. Plaintiff Has Invoked This Court's Admiralty Jurisdiction
Plaintiff simultaneously invokes this Court's admiralty and diversity jurisdiction. (Dkt. 1 at ¶¶ 2-3). "Title 28 U.S.C. § 1333(1) grants federal district courts the power to entertain [a]ny civil case of admiralty or maritime jurisdiction. [T]his grant includes jurisdiction over all contracts which relate to the navigation, business, or commerce of the sea." Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y. , 822 F.3d 620, 632 (2d Cir. 2016) (quotation marks and citations omitted). However, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, "if a claim for relief falls within the federal courts' admiralty jurisdiction, but is also within the court's subject-matter jurisdiction on some other ground-oftentimes, diversity of citizenship-a plaintiff must explicitly designate the claim as an admiralty claim or else forego admiralty's special procedures and remedies." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc. , 697 F.3d 59, 69 (2d Cir. 2012) (citations omitted); see McCague v. Trilogy Corp. , No. CIV.A. 06-887, 2007 WL 839921, at *5 n.6 (E.D. Pa. Mar. 15, 2007) ("To invoke admiralty jurisdiction under Fed. R. Civ. P. 9(h), plaintiff must affirmatively insert a statement in the pleadings identifying the claim as an 'admiralty or maritime claim.' " (citing Fedorczyk v. Caribbean Cruise Lines, Ltd. , 82 F.3d 69, 73 (3d Cir. 1996) ) ).
In this case, Plaintiff has specifically alleged that "[t]his is an admiralty and *373 maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty jurisdiction of this Court pursuant to 28 U.S.C. § 1333." (Dkt. 1 at ¶ 2); see D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd. , 886 F.3d 216, 225 (2d Cir. 2018) ("We routinely conclude that insurance policies covering marine risks fall within our maritime jurisdiction."). The fact that Plaintiff has also alleged that this Court has jurisdiction to entertain this action under principles of diversity does not subvert the invocation of federal admiralty jurisdiction. See BP Expl. & Prod. Inc. v. Cashman Equip. Corp. , 132 F.Supp.3d 876, 882 (S.D. Tex. 2015) ("If an action falls within admiralty jurisdiction, federal courts apply substantive admiralty law to claims that sound in admiralty, regardless of whether jurisdiction is also based upon diversity." (citing Pope & Talbot v. Hawn , 346 U.S. 406, 410-11, 74 S.Ct. 202, 98 L.Ed. 143 (1953) ) ), on reconsideration in part , No. A. H-13-3046, 2016 WL 1399259 (S.D. Tex. Apr. 8, 2016) ; see also Preston v. Frantz , 11 F.3d 357, 358 (2d Cir. 1993) ("[W]hen, as in this case, plaintiffs bring a suit based upon diversity jurisdiction, we nevertheless apply substantive federal maritime law if we have admiralty jurisdiction."); Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Henderson , No. 10 Civ. 8033 (PGG), 2013 WL 1245451, at *3 (S.D.N.Y. Mar. 26, 2013) ("Even if removal of the Maine action was based on diversity jurisdiction, however, admiralty choice-of-law rules apply."). As such, the special procedures attendant to this Court's admiralty jurisdiction apply to this case.
B. Legal Standard to Transfer Venue in an Admiralty Case
A federal action premised upon diversity jurisdiction is governed by the venue rules set forth in 28 U.S.C. § 1391. Kirkpatrick v. Rays Grp. , 71 F.Supp.2d 204, 211 (W.D.N.Y. 1999). Section 1391(b) provides that a civil action may generally be brought in:
(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.
28 U.S.C. § 1391(b).
However, " Fed. R. Civ. P. 82 provides that the venue provisions of 28 U.S.C. §§ 1391 - 1393 do not apply in admiralty claims within the meaning of Rule 9(h)." Chiriqui Land Co. v. M/V Snow Flower , No. 90 Civ. 2729 (JFK), 1991 WL 156345, at *3 (S.D.N.Y. Aug. 6, 1991) ; see Ferrostaal, Inc. v. Haci Hassan Yardim , No. 03 CV 4886 (GBD), 2006 WL 2819585, at *4 (S.D.N.Y. Sept. 29, 2006) ("The venue provisions of 28 U.S.C. §§ 1391 - 1392 do not apply to admiralty and maritime claims...."); Cashman Equip. Corp. v. Kimmins Contracting Corp. , No. Civ.A. 03-10463-DPW, 2004 WL 32961, at *4 (D. Mass. Jan. 5, 2004) (" Section 1391 does not apply to admiralty or maritime actions."); Richoux v. R & G Shrimp Co. , 126 F.Supp.2d 1007, 1009 (S.D. Tex. 2000) ("The venue rules that govern ordinary civil actions do not apply to cases in admiralty. Instead, the Court must look to the rules of venue particular to admiralty." (citations omitted) ); 14D Charles A. Wright, et al., Fed. Prac. & Proc. § 3817, at 348 (4th ed. 2013) ("The Supreme Court held well over a century ago that an admiralty case is not a 'civil action' within the meaning of the venue statutes." (citing *374 Atkins v. Fibre Disintegrating Co. , 85 U.S. 272, 18 Wall. 272, 21 L.Ed. 841 (1873) ) ); see generally Fed. R. Civ. P. 82 ("An admiralty or maritime claim under Rule 9(h) is governed by 28 U.S.C. § 1390.").[3] Accordingly, "[i]n federal admiralty practice, personal jurisdiction and venue analyses merge so that venue is proper in any district in which valid service of process may be had on the defendant." Hovensa LLC v. Kristensons-Petroleum, Inc. , No. 12 Civ. 5706 (SAS), 2013 WL 1803694, at *3 (S.D.N.Y. Apr. 26, 2013) (quoting Ziegler v. Rieff , 637 F.Supp. 675, 677-78 (S.D.N.Y. 1986) ).
Although admiralty cases are not considered "civil actions" for purposes of determining whether venue is proper under 28 U.S.C. § 1391, district courts may transfer admiralty actions pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1390(b) provides that "this chapter shall not govern the venue of a civil action in which the district court exercises the jurisdiction conferred by section 1333 [i.e., including a case based on admiralty jurisdiction], except that such civil actions may be transferred between district courts as provided in this chapter." In other words, "admiralty or maritime claims continue to be unencumbered by the general rules of venue stated in those statutes, but remain within the ambit of civil actions for purposes of the transfer under Section 1404(a)." 15 Charles A. Wright, et al., Fed. Prac. & Proc. § 3843, at 39 (4th ed. 2013) (footnote omitted); see Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., 743 F.2d 956, 959 (1st Cir. 1984) ("The Supreme Court has applied forum non conveniens to cases in admiralty, stating that section 1404 was 'design[ed] to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " (quoting Cont'l Grain Co. v. The FBL-585 , 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960) ) ).
A motion to transfer venue pursuant to § 1404"requires a two-part inquiry: first, 'whether the action to be transferred "might have been brought" in the transferee court'; and second, whether 'considering the "convenience of parties and witnesses," and the "interest of justice," a transfer is appropriate.' " Fuji Photo Film Co. v. Lexar Media, Inc. , 415 F.Supp.2d 370, 373 (S.D.N.Y. 2006) (quoting Berman v. Informix Corp. , 30 F.Supp.2d 653, 656 (S.D.N.Y. 1998) ). The moving party carries the "burden of making out a strong case for transfer." Filmline (Cross-Country) Prods., Inc. v. United Artists Corp. , 865 F.2d 513, 521 (2d Cir. 1989) (quotation marks and citation omitted). In other words, a district court will only exercise its discretion to grant a motion to change venue under § 1404(a) if the moving party establishes that a transfer is appropriate by "clear and convincing evidence." N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc. , 599 F.3d 102, 114 (2d Cir. 2010).
Since all parties agree that the action might have been brought in the Southern District of Florida-in other words, that the Southern District of Florida would have personal jurisdiction over all the parties had Plaintiff commenced its action in that district-the Court need only address the second part of the § 1404 test: whether transfer to the Southern District of Florida would be appropriate considering the convenience of parties and witnesses and the interests of justice.
*375 C. Whether Transfer is Appropriate
Courts in this Circuit apply a number of factors to determine the convenience of parties and witnesses and the interests of justice:
(1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.
Fuji Photo Film Co. , 415 F.Supp.2d at 373.
1. The Convenience of the Witnesses
"Convenience of the witnesses is perhaps the most important consideration in determining whether transfer is appropriate." Adirondack Transit Lines, Inc. v. Greyhound Lines, Inc. , No. 1:15-CV-01227 (LEK)(CFH), 2016 WL 5415772, at *5 (N.D.N.Y. Sept. 28, 2016). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Royal & Sunalliance v. British Airways , 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001). To carry its burden on this factor, a defendant "must provide the Court with a list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover." Savoy Owners Assocs., Inc. v. Ins. Corp. of N.Y. , No. 02 Civ. 6145 (JFK), 2003 WL 941098, at *2 (S.D.N.Y. Mar. 6, 2003). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." Indian Harbor Ins. Co. v. Factory Mut. Ins. Co. , 419 F.Supp.2d 395, 402 (S.D.N.Y. 2005).
Ocean Reef has submitted an attorney affirmation that identifies a number of non-party witnesses who reside in Florida, their familiarity with aspects of this case, and a short statement regarding their prospective testimony. (Dkt. 16-1 at 4-5). Plaintiff argues that the only relevant witnesses are "Ocean Reef's principal(s), and the professional captain and crew Ocean Reef allegedly employed." (Dkt. 21 at 14). In addition, Plaintiff argues that its own witnesses reside "near New York." (Id. ). However, Plaintiff does not identify the specific "relevant witnesses" to which it refers and only cites to the declaration of its Marine Insurance Underwriter, Thomas F. Craig, III ("Craig"), who avers that Plaintiff's "Luxury Yacht Division" is based in Edison, New Jersey. (Dkt. 26 at ¶¶ 4-6). At oral argument, Plaintiff's counsel confirmed that at least one of its potential witnesses was located in New Jersey, and that another could be found in the State of Washington. Plaintiff has provided little to support the specifics of any testimony to be elicited from any of its potential witnesses.
Moreover, there is no indication that the individuals identified by Ocean Reef are employed by Ocean Reef. In fact, the affirmation supplied by Ocean Reef indicates that they are employed by other companies or are themselves separate business entities. (Dkt. 16-1 at ¶ 18). Lastly, testimony regarding the condition of the Yacht, damages and repairs to its hull, and the circumstances surrounding the negotiations and performance of the Policy would be material to this case. Ocean Reef's counsel affirms that the non-party witnesses that Ocean Reef intends to call at trial would testify on these topics. (Id. ). Thus, since material non-party witnesses are found in Florida, and since Plaintiff *376 has failed to provide factual submissions identifying its own non-party witnesses, the nature of their testimony, or their connection to New York State, this factor weighs in favor of granting transfer.
2. Convenience of the Parties
"When analyzing the convenience to the parties, courts often look to the parties' principal places of business and the location of their offices." Freeplay Music, LLC v. Gibson Brands, Inc. , 195 F.Supp.3d 613, 618 (S.D.N.Y. 2016). "The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendant to plaintiff." Kiss My Face Corp. v. Bunting , No. 02CIV2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003).
a. Ocean Reef's Principal Place of Business
Ocean Reef submits its Articles of Organization, which provide that its principal office mailing address is located in Wellington, Florida, and its registered agent's address is located in Palm Beach, Florida. (Dkt. 16-3 at 4). Ocean Reef's Articles of Organization appear to have been executed on October 1, 2014. (Id. at 6). However, Plaintiff submits Ocean Reef's 2017 Florida Limited Liability Company Annual Report, filed with the Florida Secretary of State, which indicates that Ocean Reef's "current principal place of business," as of February 2017, is located in Rochester, New York. (Dkt. 23-1 at 5). Although Ocean Reef relies on New York State law for the proposition that "[t]he sole residence of a limited liability company for venue purposes is the county where its principal office is located as designated in its articles of organization," Pinos v. Clinton Cafe & Deli, Inc. , 139 A.D.3d 1034, 1035, 33 N.Y.S.3d 322 (2d Dep't 2016) (quotation marks omitted), this standard differs from federal venue requirements, which recognize that an appropriate venue may be any judicial district where the limited liability company is subject to personal jurisdiction. See 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question...."); see also Gen. Elec. Capital Corp. v. Titan Aviation, LLC , No. 06 Civ. 4795(LTS)(FM), 2007 WL 107752, at *6 (S.D.N.Y. Jan. 16, 2007) ("A corporate entity or multi-member partnership is considered a resident of any district where it is subject to personal jurisdiction."); Intuition Consol. Grp., Inc. v. Dick Davis Publ'g Co. , No. 03 Civ.5063 PKC, 2004 WL 594651, at *4 (S.D.N.Y. Mar. 25, 2004) (applying § 1391 in the context of a limited liability company); Hsin Ten Enter. USA, Inc. v. Clark Enters. , 138 F.Supp.2d 449, 458 (S.D.N.Y. 2000) (recognizing the broad application of § 1391 and its applicability to "unincorporated associations" and "partnerships").[4]
Some courts have declined to give much weight to "representations made in annual reports or other documents filed with a secretary of state that indicate the location of a corporate headquarters" for purposes of subject matter jurisdiction. See Transp. & Storage Sols. Inc. v. KLT Indus., Inc. , No. CIV.A. 13-40137-TSH, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014) (citing Harris v. Black Clawson Co. , 961 F.2d 547, 550 (5th Cir. 1992) );
*377 Overton v. Rainbo Baking Co. of Johnson City , 239 F. Supp. 800, 801 (E.D. Tenn. 1964) (holding that the court was "not bound" by the principal place of business listed in a "verified report," purportedly filed with the Tennessee Secretary of State, in determining subject matter jurisdiction); see also Breen v. Pruter , No. 14-CV-081-F, 2014 WL 11485243, at *2 (D. Wyo. Dec. 16, 2014) ("The mere existence of a document listing its business address is insufficient to establish its principal place of business."), aff'd , 679 F. App'x 713 (10th Cir. 2017) ; Bonar, Inc. v. Schottland , 631 F.Supp.990, 994 (E.D. Pa. 1986) (noting that the existence of "corporate documents" listing a Delaware business mailing address did not establish that Delaware was the defendant's principal place of business); American Safety Table Co. v. Schreiber & Goldberg, Inc. , 320 F.Supp.603, 604 (S.D.N.Y. 1970) (stating that the defendant's principal place of business was not in New York, even though the defendant maintained a "telephone listing and mailing address at the office of an independent distributor" in that State). On the other hand, courts have taken judicial notice of annual reports filed with the Securities and Exchange Commission, which list a company's principal place of business in a particular State. See, e.g. , Eteam, Inc v. Hilton Worldwide Holdings, Inc. , No. 15-5057 (WHW)(CLW), 2016 WL 54676, at *2 (D.N.J. Jan. 5, 2016) ; Powell v. Delta Airlines , 145 F.Supp.3d 189, 198 (E.D.N.Y. 2015) ; cf. Harris , 961 F.2d at 550 ("[I]t has been held that statements made to the Securities and Exchange Commission are likewise not binding." (citing Uniroyal, Inc. v. Heller , 65 F.R.D. 83, 87 (S.D.N.Y. 1974) (noting that while the designation of New York City as "the site of its principal executive offices on certain forms required to be filed with the Securities and Exchange Commission" was "significant, such designation is not dispositive") ) ).
The primary evidence Plaintiff submits that suggests that Ocean Reef's principal place of business was in New York at the time this action was commenced is an annual report submitted to the Florida Secretary of State in February of 2017. This report further provides that the purpose of the statement is to change the registered office or registered agent, or both, in the State of Florida. (Dkt. 23-1 at 5). Thus, it appears that at the time this report was filed, Ocean Reef's current registered agent resided in Palm Beach, Florida, and that Ocean Reef intended to change its registered agent to Bad Boys, LLC, which maintained an address in Rochester, New York. (Id. ).
The Court is hesitant to place disproportionate weight upon a single annual report in determining the location of Ocean Reef's principal place of business, especially where there is little other evidence that Ocean Reef's principal place of business was located in New York at the time the action was commenced. With that said, Ocean Reef does not effectively address this issue, and instead, asserts that "[w]hen the Policy was negotiated and issued , Ocean Reef and [the Bank] both had their principal places of business in Florida." (Dkt. 24 at 5 (emphasis added) ). Indeed, at oral argument, Ocean Reef's counsel simply pointed out that the Articles of Organization were never amended to reflect any change to its principal place of business. At least at this stage of the litigation, and where no discovery has been had between the parties, Plaintiff's submission of Ocean Reef's 2017 annual report creates a factual dispute as to the actual location of Ocean Reef's principal place of business at the time Plaintiff filed this action. For this reason, the Court will assume for purposes of this Decision and Order that Ocean Reef's principal place of business was located in New York at the time the action was commenced. However, *378 this assumption does not alter the Court's ultimate conclusion that transfer is appropriate under the circumstances of this case.
b. The Convenience of the Parties Factor is Neutral
Thus, Ocean Reef is a Florida Limited Liability Corporation with its principal place of business in New York. (Dkt. 16-3 at ¶ 4; see Dkt. 23-1 at 5). Centennial is an Arkansas Bank with its principal place of business in Arkansas. (See Dkt. 18-1 at ¶ 4). Although Centennial has one branch office in Manhattan, New York, that location falls within the geographic jurisdiction of the Southern District of New York. Furthermore, Centennial maintains fifty branch offices in the State of Florida. (Id. at ¶ 5).
Plaintiff is a Connecticut business entity with its principal place of business in Connecticut. (Dkt. 1 at ¶ 5). Although the distance between New Jersey and the Southern District of Florida may be longer than the distance measured between New Jersey and the Western District of New York, the Court questions whether it is any more convenient for Plaintiff to litigate this case in this District than in the Southern District of Florida given the conveniences of modern air travel. See Bank of Am. Corp. v. Lemgruber , 385 F.Supp.2d 200, 237 (S.D.N.Y. 2005) ("[T]he Court agrees with Judge Newman of the Second Circuit that 'in light of the realities of modern transportation and communications [,] ... [a] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel.' " (quoting Calavo Growers of Ca. v. Generali Belgium , 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J. concurring), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981) ) ). As such, this factor is neutral to the Court's analysis. See also Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional , No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (finding this factor to be neutral where either the plaintiff or the defendant would be inconvenienced by transferring the case or declining to do so).
3. The Location of the Relevant Documents and the Accessibility of Proof
"The location of documents is 'not a compelling consideration when records are easily portable.' " Flowserve Corp. v. BMCE, Inc. , No. 05 Civ. 8075 (WHP), 2006 WL 2927176, at *4 (S.D.N.Y. Oct. 12, 2006) (quoting Astor Holdings, Inc. v. Roski , No. 01 Civ. 1905 (GEL), 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002) ); see Coker v. Bank of Am. , 984 F.Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, [the defendant]'s documents easily could be sent to New York, since not many documents are involved."). Given the advances of modern technology, a defendant "must make a convincing showing [it] will suffer any real hardship in moving documents to this District." Guardian Life Ins. Co. of Am. v. Hernandez , No. 11 Civ. 2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011).
Ocean Reef argues that the relevant documents in this case are located in New Jersey and in the Southern District of Florida. (Dkt. 28 at 10). Regardless of whether this is true, Ocean Reef has not established-or made any argument asserting-that these documents could not be easily delivered to this District. See Eres N.V. v. Citgo Asphalt Ref. Co. , 605 F.Supp.2d 473, 481 (S.D.N.Y. 2009) ("There is no suggestion that the documents involved will be very voluminous or difficult to convert into electronic form for electronic distribution, or otherwise difficult to send to the Southern District of New York.");
*379 Payne v. Taylor Vision Res. , No. CIV.3:02CV2234( ), 2003 WL 22218142, at *2 (D. Conn. Sept. 23, 2003) ("[I]t has not been shown that the documents as to which only hard copies exist are so voluminous as to make shipping them to Connecticut an undue hardship.").
In addition, Ocean Reef's argument that the Yacht could not be easily transported to this District is unpersuasive. (Dkt. 28 at 10). The parties have not provided even the slightest suggestion as to why a 92-foot yacht or any component pieces thereof would need to be physically transported to the courthouses of either the Western District of New York or the Southern District of Florida. See Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc. , 202 F.Supp.3d 399, 408-09 (S.D.N.Y. 2016) ("[T]he Court is not persuaded that these pieces of physical evidence are integral to this cause of action."). Indeed, there is no reason to believe that other forms of evidence, such as photographs or videos, would not sufficiently convey the condition of the Yacht should it be required. See also S-Fer Int'l, Inc. v. Paladion Partners, Ltd. , 906 F.Supp. 211, 215 (S.D.N.Y. 1995) ("[T]he property itself is not the focus of this dispute-the lease is. If, as [the defendant] suggests, inspection of the property itself is required, photographs, videotapes, or other demonstrative evidence can be used to present it."). As such, the Court considers this factor to be neutral as well. See Whitehaus Collection v. Barclay Prod., Ltd. , No. 11 Civ. 217 (LBS), 2011 WL 4036097, at *5 (S.D.N.Y. Aug. 29, 2011) (finding the factor to be neutral where the defendant "has not shown any hardship or inability to produce necessary documents in New York"); Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc. , 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents. [The d]efendant has indicated no special facts that would make this factor weigh in its favor." (citation omitted) ), aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc. , 599 F.3d 102 (2d Cir. 2010).
4. The Locus of Operative Facts
"Where there is no material connection between the district and the operative facts, ... the interests of justice require the transfer of [the] action." Manao Invs., Inc. v. Stouts Brunswick Assocs. Ltd. P'ship , No. 96 CIV. 7100 (HB), 1997 WL 53200, at *2 (S.D.N.Y. Feb. 10, 1997). "To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.' " Age Grp. Ltd. v. Regal Logistics, Corp. , No. 06 Civ. 4328 (PKL), 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (quoting 800-Flowers, Inc. v. Intercontinental Florist, Inc. , 860 F.Supp. 128, 134 (S.D.N.Y. 1994) ). "When determining the locus of operative facts in a declaratory judgment action concerning the interpretation of an insurance policy contract, [courts in this Circuit have] considered where the insurance contract was made." Indian Harbor Ins. Co. , 419 F.Supp.2d at 405 (quoting Royal Ins. Co. of Am. v. Tower Records, Inc. , No. 02-Civ. 2612 (PKL), 2002 WL 31385815, at *3 (S.D.N.Y. Oct. 22, 2002) ). Where the policy was "negotiated" and "issued" are also relevant considerations. See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. , 474 F.Supp.2d at 485 ("As plaintiff points out, this action concerns a policy that was negotiated and executed in New York, issued in New York by a New York insurer, and subject to interpretation under New York law."); AVEMCO Ins. Co. v. GSV Holding Corp. , No. 96 CIV. 8323 LAP, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) ("The insurance policy was issued as a result of telephone conversations made in New Jersey and correspondence both sent and received in New Jersey."); see also *380 Eres N.V. , 605 F.Supp.2d at 481 ("In an action arising out of a contract, the location of the operative facts is where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." (quotation marks and citation omitted) ).
Here, the Yacht was moored in Florida at all times relevant to this action, and it was allegedly damaged by Hurricane Irma while so located. Plaintiff's allegations that Ocean Reef failed to comply with various conditions of the Policy, if true, would have all taken place in Florida. In other words, if Ocean Reef failed to employ and maintain a full-time captain and professional crew on the Yacht, this failure occurred in Florida where the Yacht was located. In addition, any costs incurred as a result of raising the Yacht after it had been damaged also accrued as a result of actions that took place in Florida. Nonetheless, "[t]he fact that the insured property is located in Florida ... is not decisive" in determining how this factor should be weighed. Reliance Ins. Co. v. Six Star, Inc. , 155 F.Supp.2d 49, 59 (S.D.N.Y. 2001).
Plaintiff argues that because the Policy "was solicited, negotiated and issued in New Jersey," the locus of operative facts factor weighs in favor of finding venue in this District. (Dkt. 21 at 17). Centennial argues that the Policy was actually "negotiated in Florida" (Dkt. 18-2 at 9), and Ocean Reef concurs, arguing that the Policy "was negotiated and performed" in Florida, and that that was "where the loss occurred" (Dkt. 16-8 at 13). Ocean Reef also supplies the declaration of Richard Gollel ("Gollel"), who avers that he is "the beneficial owner of the [Yacht]." (Dkt. 16-7 at 1). Gollel further avers that the Policy "was negotiated in Florida," (id. at ¶ 8), that Hull & Company, Inc. ("Hull")-identified as the "Producer" on the Policy-was Plaintiff's representative that issued the Policy, and that Hull "is located and incorporated in Florida." (Id. at ¶¶ 10-11).
In response, Plaintiff filed the declaration of Craig, who avers that the Plaintiff's Luxury Yacht Division, which is located in Edison, New Jersey, issued the Policy. (Dkt. 26 at ¶ 5). Craig also states that Hull "never represented or acted for" Plaintiff; rather, Hull acted as Ocean Reef's "insurance broker." (Id. at ¶¶ 8-9). Craig further avers that Hull "negotiated the terms of the [Policy] with [Plaintiff's] Luxury Yacht Division in Edison, New Jersey." (Id. at ¶ 11). The application submitted by Hull listed Ocean Reef's address at 45 Cedarfield Commons, Suite FA, Rochester, NY 14612, and identified Lisa Steinhoff as the "beneficial owner" of the Yacht. (Id. at ¶¶ 14-15). Plaintiff then "issued its initial policy to Ocean Reef using the Rochester, New York address provided by Ocean Reef's application." (Id. at ¶ 17). Hull negotiated and "solicited renewals of the Policy" with Plaintiff's New Jersey office, and each reissuance was processed through that office. (Id. at ¶¶ 19-21). Each version of the Policy "used Ocean. Reef's Rochester, New York address." (Id. at ¶ 22).
It is the Court's view that the locus of operative facts falls within New Jersey or Florida, not New York. There is no evidence that any of the negotiations regarding the Policy, or its renewals, occurred in New York. Hull, a Florida corporation, filed the initial application with Plaintiff's Luxury Yacht Division in New Jersey, and all subsequent renewals were "processed" through that office as well. Thus, whether or not the Policy negotiations occurred in Florida or in New Jersey, (Dkt. 16-7 at ¶ 8; Dkt. 26 at ¶ 11), neither position grounds this case in New York.
It is true that the Policy includes Plaintiff's Rochester, New York address, (Dkt. 15 at 24, 30, 34), and Craig confirms that each version of the Policy "used Ocean *381 Reef's Rochester, New York address." (Dkt. 26 at ¶ 22 (emphasis added) ). However, Plaintiff does not submit evidence indicating that the Policy was actually sent to New York. Instead, the record indicates that the Policy was negotiated in either New Jersey or Florida, was then issued to Hull-a Florida corporation-which produced the Policy to Ocean Reef for performance in Florida.
Whether or not there are multiple loci of operative facts is irrelevant, because it does not appear that New York bears any more than a tangential relation to the facts of this case. See Royal Ins. Co. of Am. , 2002 WL 31385815, at *4 ("[I]t is clear that California, the place where the [p]olicy was applied for, purchased, and delivered, is the locus of operative facts."); Nat'l Tr. Ins. Co. v. Pa. Nat'l Mut. Cas. Ins. Co. , 223 F.Supp.3d 1236, 1246 (M.D. Fla. 2016) ("[E]ven if it is unclear whether Florida is the locus of all the operative facts, it is clear that North Carolina is not."); Soler v. Indymac Mortg. Servs. , No. 14-CIV-22541, 2015 WL 3952620, at *4 (S.D. Fla. June 29, 2015) (noting that while "New York and California have at least some connection to this case," ... [i]t is clear ... that the locus of operative facts is not the Southern District of Florida"). Where the locus of operative facts is split amongst several forums, or is focused in a forum that is neither the transferor nor the transferee forum, courts have, at minimum, viewed this factor neutrally. See Projects Mgmt. Co. v. Dyncorp Int'l LLC , No. 6:12-CV-1864-ORL-22GJK, 2013 WL 12096515, at *3 (M.D. Fla. Mar. 11, 2013) ("Neither this district nor the E.D. Va. is the 'locus' of operative facts, so this factor is neutral."); Fairchild v. Eisai, Inc. , No. 3:11CV452 MRK, 2011 WL 3438408, at *3 (D. Conn. Aug. 4, 2011) (finding that this factor did "not weigh in favor of either the District of New Jersey or the District of Connecticut" where the "locus of operative facts in this case is split between New Jersey ... and the various districts in which the plaintiffs worked"); Hexcel Corp. v. Ineos Polymers, Inc. , No. 1:08-CV-3637-CC, 2009 WL 10665434, at *5 (N.D. Ga. July 21, 2009) ("[T]he Court finds that there is no particular locus of operative facts in this case and that this factor weighs neither in favor of nor against transfer."); Canale ex rel. Othmer v. Manco Power Sports, LLC , No. 06 CIV. 6131(PKL), 2007 WL 2406904, at *5 (S.D.N.Y. Aug. 20, 2007) (stating that the locus of operative facts was likely in a venue that was not sought by either party, but since it was not found in either of the contested forums, the factor did not influence the court's decision); Winterthur Int'l Am. Ins. Co. v. Bank of Montreal , No. 02 Civ. 6889 (RCC), 2002 WL 31521102, at *4 (S.D.N.Y. Nov. 13, 2002) (noting that the locus of operative facts factor did not weigh in favor of or against transfer where "[a]lthough the agreements were negotiated primarily in Texas, some negotiations took place in New York, and any arbitration will take place in New York because the agreements provide for the application of New York law"); see also Buckingham Props., LLC v. Atl. Cas. Ins. Co. , No. 16-CV-3428 (FB), 2017 WL 3912996, at *2 (E.D.N.Y. Sept. 6, 2017) ("Because the majority of the relevant facts to this litigation occurred in the Western District or out of state and none occurred in the Eastern District, the locus of operative facts weighs heavily in favor of transfer."); Pence v. Gee Grp., Inc. , 236 F.Supp.3d 843, 855 (S.D.N.Y. 2017) ("Given the fact that New York is at best one of several loci of operative facts, this factor provides little reason to deny transfer.").
In sum, the Court is not persuaded that New York is the locus of operative facts. If anything, it appears that New Jersey is the place where the Policy may have been negotiated and issued. Nevertheless, whether or not Florida is the only loci of *382 operative facts, or even the primary one, it appears to have a greater connection to the negotiation, issuance, and performance of the Policy than New York. Accordingly, the Court views this factor as weighing slightly in favor of transference.
5. The Availability of Compulsory Process
" 'The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.' " Billing v. Commerce One, Inc. , 186 F.Supp.2d 375, 378 (S.D.N.Y. 2002) (quoting Arrow Elecs., Inc. v. Ducommun Inc. , 724 F.Supp. 264, 266 (S.D.N.Y. 1989) ). "Under Federal Rule of Civil Procedure 45, a district court can enforce a trial subpoena served on a witness within the state or within 100 miles of the court." In re Anadarko Petroleum Corp. , No. 10 CIV. 05894 (PGG), 2012 WL 12894796, at *8 (S.D.N.Y. Mar. 19, 2012) ; see Royal & Sun All. Ins., PLC , 202 F.Supp.3d at 409 (stating that "non-party witnesses would be subject to the court's subpoena power (i) within 100 miles of where they reside, are employed, or regularly transact business if commanded to attend a trial, hearing, or deposition or (ii) within the state, if commanded to attend a trial and it would not be substantial expense"); see also Pence v. Gee Grp., Inc. , 236 F.Supp.3d 843, 857 (S.D.N.Y. 2017) ("Pursuant to Federal Rule of Civil Procedure 45(c)(1)(A), a court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state.").
Witnesses "under [a d]efendant's control ... [would] be available to testify in either venue." Dentsply Int'l Inc. v. Dental Brands for Less LLC , No. 15 Civ. 8775 (LGS), 2016 WL 868335, at *2 (S.D.N.Y. Mar. 4, 2016) ; see Medien Patent Verwaltung AG v. Warner Bros. Entm't , 749 F.Supp.2d 188, 191 (S.D.N.Y. 2010) ("[T]he movants have still not represented that these California-based witnesses ... would include anyone other than the movants' own employees. '[E]mployees of the parties will, as a practical matter, be available in any venue by virtue of the employment relationship'." (quoting Race Safe Sys., Inc. v. Indy Racing League , 251 F.Supp.2d 1106, 1111 (N.D.N.Y. 2003) ) ). As noted above, there is no indication that the individuals identified by Ocean Reef are employed by Ocean Reef, and the affirmation supplied by Ocean Reef indicates that they are employed by other companies or are themselves separate business entities. (Dkt. 16-1 at ¶ 18). By contrast, it appears that any individual stationed at Plaintiff's Luxury Yacht Division in Edison, New Jersey is likely able to testify in either venue due to an employment relationship with Plaintiff.
However, Plaintiff correctly notes that Ocean Reef has not suggested that any of its proposed non-party witnesses would refuse to testify in this District. See Fuji Photo Film Co. , 415 F.Supp.2d at 375 ("[B]ecause neither plaintiffs nor defendant indicate that any non-party witnesses will be called to testify, or that if they are called they will be unwilling to testify , this factor has no impact on the analysis." (emphasis added) ); Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG , 160 F.Supp.2d 722, 743 (S.D.N.Y. 2001) ("It is worth noting here that [the defendant] appears only to surmise that these non-party witnesses will be unwilling to testify. As the Second Circuit has suggested, the unavailability of compulsory process is a less compelling factor where a defendant has not claimed that its potential witnesses would be unwilling to testify." (citing Peregrine Myanmar Ltd. v. Segal , 89 F.3d 41, 47 (2d Cir. 1996) ("[N]either side claims that any witness will be unwilling to testify.") ) ); see also *383 Myers v. Lennar Corp. , No. 08-CV-2799 (JFB)(MLO), 2010 WL 1992200, at *5 (E.D.N.Y. May 17, 2010) (stating that the defendant "does not actually assert that either witness has stated he would be unwilling to testify in this district," and noting that if the defendant's "witnesses did in fact refuse to travel to this district, they could instead testify via deposition"). Therefore, given the lack of specific information regarding Plaintiff's proposed witnesses, and absent any indication that Ocean Reef's non-party witnesses would be unwilling to testify in this case, the availability of compulsory process factor does not weigh strongly for or against transfer.
6. The Relative Means of the Parties
"In analyzing whether the relative means of the parties favors transfer, a court should determine whether a party's 'financial situation would meaningfully impede its ability to litigate this case in either forum.' " Ivy Soc'y Sports Grp., LLC , 2009 WL 2252116, at *8 (quoting In re Collins & Aikman Sec. Litig. , 438 F.Supp.2d 392, 397 (S.D.N.Y. 2006) ). "[T]his factor has 'rarely been a dispositive reason to grant or deny a transfer motion' and is not so here." Schoenefeld v. New York , No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *3 (S.D.N.Y. Apr. 16, 2009) (quoting Thomas Am. Corp. v. Fitzgerald , No. 94 Civ. 0262(CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994) ).
Plaintiff has not provided any argument or evidence suggesting that it does not have the financial means to litigate this case in the State of Florida. In its reply papers, Ocean Reef argues that Plaintiff "is one of the largest insurers in the United States of America that does business in many states, including Florida." (Dkt. 28 at 11). By contrast, Ocean Reef claims that it is only "a small Florida Limited Liability Company with far fewer resources than [Plaintiff]." (Id. ). The Court notes that whether or not Ocean Reef's argument is true, it has not demonstrated that its financial position would "meaningfully impede its ability to litigate this case" in the Western District of New York. See Ivy Soc'y Sports Grp., LLC , 2009 WL 2252116, at *8 (quotation marks and citation omitted). Furthermore, Ocean Reef has not provided any specific information as to its own assets other than the aforesaid assertion made for the first time in its reply papers. See id. (finding this factor to be neutral where neither party "provided specific information concerning its assets and resources"); Fuji Photo Film Co. , 415 F.Supp.2d at 375-76 ("The sixth factor does not weigh in favor or against transfer, as the parties have not alleged any significant disparity in means which would impact their ability to litigate in another forum."). Accordingly, this factor is neutral to the Court's analysis.
7. Forum's Familiarity with the Governing Law
"Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies ... and apply federal maritime choice of law rules to determine which state's law to apply." N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.) , 266 F.3d 112, 121 (2d Cir. 2001) (quotation marks and citation omitted); see State Trading Corp. of India v. Assuranceforeningen Skuld , 921 F.2d 409, 414 (2d Cir. 1990) ("A federal court sitting in admiralty must apply federal choice of law rules."). "There is no specific federal rule governing construction of maritime insurance contracts." Commercial Union Ins. Co. v. Flagship Marine Servs., Inc. , 190 F.3d 26, 30 (2d Cir. 1999) (citing Wilburn Boat Co. v. Fireman's Fund Ins. Co. , 348 U.S. 310, 321, 75 S.Ct. 368, 99 L.Ed. 337 (1955) ).
In the context of maritime contracts, courts apply federal choice-of-law *384 rules by "ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." Lauritzen v. Larsen , 345 U.S. 571, 582, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) ; see State Trading Corp. of India , 921 F.2d at 416 (" Lauritzen 's approach to choice of law issues is relevant in addressing matters involving maritime contracts."). In proceeding under this analysis, the following contacts should be reviewed:
(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.
Advani Enters., Inc. v. Underwriters at Lloyds , 140 F.3d 157, 162 (2d Cir. 1998).
Here, the Policy does not contain a choice-of-law provision, and thus, the first factor does not influence the Court's analysis. See Hartford Fire Ins. Co. v. Mitlof , 193 F.R.D. 154, 157 (S.D.N.Y. 2000) (relying on the other factors where there was no choice-of-law provision in the marine insurance contract). As noted above, the place where the Policy was negotiated, issued, and signed, is disputed. However, it appears that negotiations occurred in either New Jersey or Florida, and that the Policy was procured by Hull in one of those forums, and not New York State-even if the Policy incorporated Ocean Reef's New York address. Furthermore, the place of performance appears to be Florida, which also happens to be the location of the subject matter of the Policy.
Lastly, Plaintiff is a Connecticut business entity with its principal place of business in Connecticut, while Ocean Reef appears to be a Florida limited liability company with its principal place of business in Rochester, New York. The Bank was a Florida corporation with its principal place of business in Florida, but it has since merged with Centennial, which is an Arkansas Bank with its principal place of business in Arkansas. Notably, Centennial maintains fifty of its branch offices in Florida, and only one branch office in Manhattan. (Dkt. 18-1 at ¶ 5). After considering each of these factors, the Court finds, for purposes of this Decision and Order, that the choice-of-laws analysis disfavors New York and favors the State of Florida, which appears to have more relevant contacts under the framework set forth in Advani Enterprises . As such, this factor favors transferring this action to the Southern District of Florida.
8. The Weight Accorded to Plaintiff's Choice of Forum
"A plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Royal & Sunalliance , 167 F.Supp.2d at 576. "[T]he plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, or where the plaintiff is a resident of the forum district." Berman v. Informix Corp. , 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998) (citation omitted). However, this factor is diminished if "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." Nieves v. Am. Airlines , 700 F.Supp. 769, 772 (S.D.N.Y. 1988).
As noted above, "the loci of operative facts in this case include several places other than New York. Therefore, this factor does not weigh in favor of denying transfer." Pence , 236 F.Supp.3d at 856 ; see *385 GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc. , No. 13 Civ. 1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013) ("The fact that New York lacks a connection to the underlying facts diminishes the weight accorded to plaintiff's choice of forum.").
9. Considerations of Trial Efficiency and the Interests of Justice
"The interests of justice are based on the totality of the circumstances." TM Claims Serv. v. KLM Royal Dutch Airlines , 143 F.Supp.2d 402, 407 (S.D.N.Y. 2001) (quotation marks and citation omitted). This factor "relates primarily to issues of judicial economy." Royal & Sunalliance , 167 F.Supp.2d at 578 (quotation marks and citation omitted). "Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor for the Court to consider and is accorded 'some weight.' " Hernandez v. Graebel Van Lines , 761 F.Supp. 983, 991 (E.D.N.Y. 1991) (citation omitted). Indeed, this District's civil docket is considered to be one of the busiest in the nation. See generally Vorobey v. Cleveland Bros. Equip. Co. , No. 17-CV-1115V(SR), 2018 WL 1640571, at *2 (W.D.N.Y. Apr. 5, 2018) (stating that "defendants note that the Western District of New York has one of the most congested civil dockets in the nation," and finding that transference to the Middle District of Pennsylvania is appropriate because it "is in a superior position to provide the parties with a swift resolution"). On the other hand, the Court understands that the Southern District of Florida also has a heavy caseload. See Cleveland v. Kerzner Int'l Resorts, Inc. , No. 1:14-CV-23897, 2015 WL 5695276, at *7 (S.D. Fla. Sept. 29, 2015) (noting that "[t]he Southern District of Florida has one of the busiest dockets in the country"), aff'd , 657 F. App'x 924 (11th Cir. 2016).
Nonetheless, "retention of a case such as this, with only minimal connections to New York, would not serve the interest of justice, and would only 'delay adjudication of other cases brought by parties who are compelled to sue [here].' " Royal & Sunalliance , 167 F.Supp.2d at 579 (quoting Kanbar v. U.S. Healthcare, Inc. , 715 F.Supp. 602, 606 (S.D.N.Y. 1989) ). In addition, the totality of the circumstances supports transferring this action to the Southern District of Florida because the material events surrounding how the Policy was performed occurred in Florida, and it appears that many witnesses that could provide relevant testimony regarding the issues in this case are located in that State. See TM Claims Serv. , 143 F.Supp.2d at 407 (finding that the "totality of the circumstances" supported transfer of venue where "[t]he material events that support [the p]laintiff's allegations occurred in Georgia, and most of the witnesses (and documents) that can prove or disprove [the p]laintiff's claims are in Georgia"); Ring v. Exec. Jet Aviation, Inc. , No. 01 CIV. 738 (DLC), 2001 WL 492428, at *3 (S.D.N.Y. May 8, 2001) (finding that the totality of the circumstances supported the defendant's motion to transfer where the "material facts that support plaintiff's allegations occurred in Ohio, and the documents and witnesses that can prove or disprove these claims are in Ohio").
After considering all of the factors discussed above, the Court concludes that, on balance, the factors favor transferring this case to the Southern District of Florida. Furthermore, because transfer is appropriate, there is no need to consider Centennial's alternative motion to dismiss for lack of personal jurisdiction. See Multiwave Sensor Inc. v. Sunsight Instruments, LLC , No. 1:16-CV-1361-GHW, 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017) ("Because a transferring court need not have personal jurisdiction over a defendant to transfer the case, rather than dismissing the case as to Sunsight Holdings and Sunsight Industries for lack of personal *386 jurisdiction, the Court will consider the question of venue transfer as to the entire case."); Oliver v. United States , No. 13-CV-5497, 2014 WL 4543005, at *1 (E.D.N.Y. Sept. 12, 2014) ("Defendants argue convincingly that this Court may lack personal jurisdiction over the individual defendants; however, I need not address this issue because even if the Court lacks personal jurisdiction over the defendants, transfer is still proper pursuant to § 1404(a) if it is in the interest of justice."); ZPC 2000, Inc. v. SCA Grp., Inc. , 86 F.Supp.2d 274, 276 (S.D.N.Y. 2000) ("[W]e need not decide defendants' personal jurisdiction motion because, even assuming arguendo that we were to find that this Court has no personal jurisdiction over the defendants, we could still order the case to be transferred to a more convenient forum in the interests of justice under either § 1404 or § 1406."). Accordingly, insofar as Centennial makes an alternative argument for dismissal, that part of its motion is denied as moot.
Likewise, because the Court finds that transfer is appropriate based upon the parties' initial motion papers, the Court also denies Ocean Reef's motion for leave to file supplemental evidence as moot. However, the Court notes that any rebuttal argument that Ocean Reef sought to make regarding the loan agreement between itself and the Bank could have been-and should have been-made in its reply papers. See generally Erie Painting & Maint., Inc. v. Ill. Union Ins. Co. , 876 F.Supp.2d 222, 224 (W.D.N.Y. 2012) ("Erie Painting's motion to file a sur-reply will be denied, as this Court finds that it has had sufficient opportunity to present its arguments." (citation omitted) ); Kapiti v. Kelly , No. 07 Civ. 3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court 'in the position of refereeing an endless volley of briefs.' " (quoting Byrom v. Delta Family Care-Disability & Survivorship Plan , 343 F.Supp.2d 1163, 1188 (N.D. Ga. 2004) ) ), aff'd , No. 07 CIV. 3782 (RMB) (KNF), 2008 WL 1882652 (S.D.N.Y. Apr. 28, 2008) ; accord Mellian v. Hartford Life & Acc. Ins. Co. , No. 14-10867, 2014 WL 7366104, at *1 n.1 (E.D. Mich. Dec. 24, 2014) ("[A] sur-reply is appropriate only where the opposing party raises new arguments or presents new evidence for the first time in a reply brief, such that the party seeking leave to file the sur-reply had no opportunity to address the arguments or evidence in its prior submissions." (citing Mirando v. U.S. Dep't of Treasury , 766 F.3d 540, 548-49 (6th Cir. 2014) ) ); Solomon v. Human Servs. Coal. of Tompkins Cty. Inc. , No. 5:11-CV-226 (GTS/ATB), 2012 WL 3996875, at *4 (N.D.N.Y. Sept. 11, 2012) (stating that even had the plaintiff requested leave to file a sur-reply, "the Court would have denied that request, given (1) the lack of usefulness of her sur-reply, and (2) the fact that she was afforded more than adequate opportunity to brief the issues presented by the Human Services Defendants' motion"); cf. Agilent Techs., Inc. v. Micromuse, Inc. , No. 04 Civ. 3090 (RWS), 2004 WL 2346152, at *9 n.2 (S.D.N.Y. Oct. 19, 2004) (granting the motion to file a supplemental declaration, and noting that "[a]lthough submission of supplemental papers is often more of a hindrance than a help," the instant papers were "carefully cabined and respond to arguably new contentions contained in reply papers on the underlying motion").
CONCLUSION
For the foregoing reasons, Ocean Reef's motion to transfer (Dkt. 16) is granted, Centennial's motion to transfer, or, in the alternative to dismiss (Dkt. 18) is granted insofar as it requests the transfer of venue but is otherwise denied as moot, and *387 Ocean Reef's motion for leave to file supplemental evidence (Dkt. 30) is also denied as moot. The Clerk of Court is directed to transfer this case to the Southern District of Florida.
SO ORDERED.

On the same day that this case was filed, the Bank merged with Centennial Bank ("Centennial"), an Arkansas bank with its principal place of business in Arkansas. (Dkt. 18-1). Accordingly, any reference to "Defendants" or "the Bank" necessarily includes Centennial.

The following facts are taken from Plaintiff's Complaint (Dkt. 1) unless otherwise specified.

Ocean Reef cites Korea Exp. USA, Inc. v. K.K.D. Imports, Inc. , 103 F.Supp.2d 682 (S.D.N.Y. 2000) for the proposition that "[b]ecause this case is in admiralty, the appropriate venue statute is 28 U.S.C. § 1391(b)...." Id. at 687. However, to the extent that Korea Express determined that § 1391 applies in determining the appropriate venue in an admiralty action, the Court disagrees based upon the aforementioned authorities.

Although § 1391(b) does not apply in determining the appropriate venue in a case proceeding under a federal court's admiralty jurisdiction, the Court sees no reason to conclude that the principles for determining a party's residency as set forth in § 1391(c) would apply with any less force in the admiralty context.